Ernst A. HENNE, et al., Plaintiffs,

v.

ALLIS–CHALMERS
CORPORATION, Defendant.

No. 86–C–219.

United States District Court,
E.D. Wisconsin.

May 22, 1987.

Dennis Weden, Heiner Giese, Milwaukee, Wis., for plaintiffs.

Richard Schnadig, Charles Wolf, Chicago, Ill., for defendant.

## DECISION AND ORDER

CURRAN, District Judge.

Forty-eight former salaried employees of Allis-Chalmers Corporation are suing the company in its corporate capacity and in its capacity as trustee of the Allis-Chalmers Salaried Employees Termination Pay Plan. They seek to overturn the defendant's decision to deny them severance benefits after Allis-Chalmers sold the operation in which they were employed to A–C Compressor, which continued to employ the plaintiffs at

the same jobs and salaries, but with reduced benefits. In their complaint, as amended, the plaintiffs allege eleven causes of action:

COUNT I: Breach of an Employee Retirement Income Security Act of 1974 (ERISA) severance pay plan;

COUNT II: Violations of ERISA disclosure and fiduciary obligations;

COUNT III: Breach of Contract;

COUNT IV: Intentional Breach of Contract;

COUNT V: Violation of section 109.07 of the Wisconsin Statutes; claim for compensatory damages;

COUNT VI: Violation of section 109.07 of the Wisconsin Statutes; claim for punitive damages;

COUNT VII: Violation of section 109.03 of the Wisconsin Statutes;

COUNT VIII: Tortious breach of fiduciary duty;

COUNT IX: Breach of the duty to act fairly and in good faith;

COUNT X: Intentional interference with prospective economic activity;

COUNT XI: Intentional interference with the employment relationship of the plaintiffs and A–C Compressor Corporation.

They seek compensatory and punitive damages for these claims. This court has federal question jurisdiction over the claims raised under the Employee Retirement Income Security Act (ERISA), *see* 28 U.S.C. § 1331 and 29 U.S.C. § 1132, and diversity jurisdiction over the state common law and statutory claims. *See* 28 U.S.C. § 1332.

After removing this case from the Milwaukee County Circuit Court, the defendant answered and, after the close of discovery, moved for summary judgment on all claims. At the same time, the plaintiffs filed a cross motion for partial summary judgment of liability on Counts I, II, V & VI. Both motions are now fully briefed and ready for decision.

## I. FACTS

In support of its motion Allis-Chalmers has submitted authenticated documents and portions of the depositions of plaintiffs Ernst Henne, Richard Endres and Lawrence Wittman; of attorneys John Schleismann, Margaret Bruemmer and Richard Wolff; of vice president of finance for Allis-Chalmers, Ronald Burns; of president of A–C Compressor Corporation, William Conner; and of executive vice president and chief financial officer of A–C Compressor, Kenneth Gardner. Based on these documents, the defendant has compiled the following version of "undisputed" facts:

Allis-Chalmers, a manufacturing company based in West Allis, Wisconsin, suffered a severe decline in its business and substantial losses in the early 1980's. Many employees were laid off. In order to maintain its financial viability, Allis-Chalmers sold some of its business units, including the Compressor Operation, previously a part of its Equipment Services Division.

Although several buyers negotiated with Allis-Chalmers to purchase the operation, the ultimate purchaser, A–C Compressor Corporation, was formed by a "leveraged buy-out" management group which included William Conner, prior manager of the Compressor Operation, and Kenneth Gardner, controller of the Equipment Services Division. Their group, through its attorneys (Reinhart, Boerner, Van Deuren, Norris and Riselbach) approached Allis-Chalmers with a proposal in January, 1985.

Thereafter, Allis-Chalmers and the Conner group exchanged a series of drafts which ultimately led to the Asset Purchase Agreement. The initial draft, produced by Allis-Chalmers, contained language concerning numerous employee benefit plans. The next draft, prepared by the Reinhart firm, and all subsequent proposals eliminated virtually all reference to benefit plans at the purchaser's request.

During the negotiations, employee benefits were discussed briefly. Neither the principals of A–C Compressor, their attorneys nor the responsible attorneys for Allis-Chalmers (Margaret Bruemmer and Richard Wolff) could recall any specific discussion concerning benefit plans to be

maintained by A–C Compressor after the sale.

The Asset Purchase Agreement was signed on Tuesday, February 25, 1985. Subsequently, members of the purchasing group interviewed other equity partners to finalize the financing necessary to close the deal by Friday, February 28, 1985. Absent the necessary funding, the transaction would have fallen through and the purchasers would have lost their down payment.

On Wednesday, February 26, 1985, Allis-Chalmers announced that A–C Compressor had been formed and that the Compressor Operation employees would now work for A–C Compressor. Although the Plaintiffs had heard rumors that the Operation was being offered for sale, they were not directly involved in any of the negotiations and did not know the terms of the negotiations or sale.

By Friday, February 28, 1985, the funding was obtained and the closing occurred on that date.

Upon the sale of the Compressor Operation to A–C Compressor, Plaintiffs continued in their jobs without missing a minute of work. They also continued to receive the same salary and to perform the same duties as previously. The new company offered the prior Allis-Chalmers employees certain benefits, including vacation pay and a disability insurance plan. The amount of an employee's vacation entitlement under the A–C Compressor policy depends upon length of employment and, for that purpose, years at Allis-Chalmers were included. Thus, example, if an employee had 10 years of service with Allis-Chalmers before the sale, he was entitled to three weeks vacation from A–C Compressor. An employee hired by A–C Compressor from another source with 10 years experience would only be entitled to a one week vacation.

The disability plan provided by A–C Compressor had an eligibility period for coverage under which a new employee would not receive coverage until the first day of the following month. The Plaintiffs nevertheless received immediate coverage effective as of February 25, 1985.

A–C Compressor does not maintain a pension or termination pay plan.

Allis-Chalmers maintained numerous employee benefit plans for its salaried employees, including the Allis-Chalmers Termination Pay Plan ("the Plan"). The Plan in effect in 1977 contained the following relevant language regarding eligibility for termination benefits:

A Covered Employee whose employment with the Company is involuntarily terminated from active service (or during the first 90 days of an excused absence or leave of absence), *other than ... termination following an offer of employment with credit for Company service with another employer who continues a former Company operation, ...* shall be an "Eligible Employee" eligible for a termination payment. (emphasis supplied).

In 1982, the above-quoted provision of the Termination Pay Plan was amended to delete the phrase "with credit for company service."

Summaries of all Allis-Chalmers benefit plans were contained in an employee booklet, "Looking Beyond Your Paycheck." It described the Termination Pay Plan, and included the following:

You will not be eligible if your termination is for cause, if it follows an offer of continued employment with the Company at any location or follows an offer of employment with credit for service with Allis-Chalmers with another employer which continues a Company operation.

The booklet also cautioned that it was only a summary of the Plan and that:

Complete details of the plan appear in the plan document, which governs its operation and administration. This plan document would take precedence, of course, if there should be any conflict between its provisions and the information in this booklet.

The benefits booklet was not revised to reflect the 1982 plan amendment.

As of February 1, 1985, further amendments to the Plan were adopted

which, among other things, reduced the amount of benefits which an eligible employee could receive. A written announcement explaining these changes was sent to all employees, including Plaintiffs, on January 18, 1985.

By letter dated July 24, 1985, Plaintiffs, through their attorneys, requested termination pay benefits under the Termination Pay Plan. The Company considered their request and denied it by letter dated August 9, 1985. The denial was based on the language of Section 2 of the plan, as amended in 1982, which excludes from coverage employees who are terminated "following an offer of employment with another employer who continues a former Company operation." The Company explained that termination pay is intended as a buffer against loss of income for an individual facing a period of unemployment.

On August 26, 1985, Plaintiffs appealed the decision to the Allis-Chalmers Compensation and Benefits Committee-Review Committee. It denied the appeal, relying first upon the express exclusion contained in the Plan as amended in 1982. Addressing another contention in Plaintiffs' appeal, the Committee also noted that while the Looking Beyond Your Paycheck Handbook did not reflect the 1982 revision, it did state that the plan documents are controlling and "take precedence ... if there should be any conflict between its provisions and the information in [the] booklet."

The Committee further ruled that, even if the language of the 1977 plan governed, the same result would be reached because A–C Compressor both continued an operation and gave credit for Allis-Chalmers service for vacation and disability benefit purposes. Plaintiffs then filed the present action.

Allis-Chalmers Corporation's Memorandum in Support of Its Motion for Summary Judgment at 2–7 (citations and footnotes omitted).

The plaintiffs do not dispute the general outline of the controversy as depicted by the defendants. However, the plaintiffs contend that the testimony concerning the allegedly poor financial health of Allis-Chalmers is suspect and irrelevant. In contrast to the defendant's version, the plaintiffs point out that the new company's benefits are not equal to those they enjoyed at Allis-Chalmers. For example, vacation pay is not expressly tied to the employees' Allis-Chalmers vacation rights. In addition, the disability plans maintained by A–C Compressor offer less favorable benefits than the Allis-Chalmers' plan. According to the plaintiffs, A–C Compressor did not give its employees a written short term disability plan until June 1, 1986.

The plaintiffs also quarrel with the defendant's characterization of termination pay as a "buffer" against a period of unemployment. The plaintiffs point out that neither the Plan document nor the employee handbook contain any such rationale. They say that the sole stated purpose of the termination Plan is to provide benefits upon involuntary termination from active employment.

## II. LEGAL STANDARDS

The United States Supreme Court recently set forth the following principles to be applied in ruling on a motion for summary judgment:

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact.

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion or categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinnings of those disputes.

More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

*Anderson v. Liberty Lobby, Inc.*, — U.S. ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citations omitted). *See also Celotex Corporation v. Catrett*, — U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir. 1986); *Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 496 (7th Cir.1986).

The Court went on to say that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. at 2511. When a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, or is no more than a scintilla, a summary judgment may be granted. The substantive evidentiary standard of proof that would apply at a trial on the merits applies on a motion for summary judgment. *Id.* at 2512.

The Court cautioned that it is not authorizing a trial on affidavits. *Id.* at 1213. Credibility determinations and the weighing of evidence must still be done at trial. Moreover, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in favor of the nonmovant. *Id.*

In *Anderson v. Liberty Lobby*, a libel action, the Court emphasized that, even where intent or motive is at issue, the nonmovant cannot rest on the pleadings, but must present affirmative evidence, even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery. *Id.* at 2514.

## III. ERISA CLAIMS

■ In this case the law governing the plaintiffs' federal claims is found in the Employee Retirement Income Security Act of 1974 (ERISA). *See* 29 U.S.C. §§ 1001–1461. ERISA provides a private right of action to any beneficiary to enforce the terms of either a pension or a welfare benefit plan. *See* 29 U.S.C. § 1132(a)(3)(B)(ii). The plan at issue here is the Allis-Chalmers Salaried Employees' Termination Pay Plan (Plan), a nonfunded, noncontributory plan. Although ERISA is silent as to the legal status of severance pay plans, most courts which have considered the matter regard them as "employee welfare benefit plans" within the meaning of 29 U.S.C. § 1002(1) and 29 C.F.R. 2501.3–1. *See, e.g., Sly v. P.R. Mallory & Company*, 712 F.2d 1209, 1213 (7th Cir.1983); *Adcock v. Firestone Tire & Rubber Company*, 616 F.Supp. 409, 412–14 (M.D.Tenn.1985). Welfare benefit plans are subject to ERISA reporting and disclosure requirements, *see* 29 U.S.C. §§ 1021–31, and standards of fiduciary conduct governing the employer's administration of the plans. *See*, 29 U.S.C. §§ 1101–14. However, unlike pension plans, welfare benefit plans are not subject to any ERISA mini-

mum substantive content provisions. They are not subject to vesting of benefits or to participation and funding obligations either. Moreover, ERISA does not prevent elimination of previously offered benefits as long as they are not vested or accrued. *Coleman v. General Electric Company*, 643 F.Supp. 1229, 1238 (E.D.Tenn.1986).

It is undisputed that the forty-eight plaintiffs are both "participants" and "beneficiaries" under the Allis-Chalmers Plan. *See* 29 U.S.C. § 1002(7) & (8). It is also undisputed that the defendant is and was the Plan "administrator" and, as such, is a fiduciary under ERISA. *See* 29 U.S.C. § 1002(16).

For their first cause of action the plaintiffs allege that Allis-Chalmers breached the ERISA Plan by failing to pay them severance benefits upon termination. In Count II they claim that the Plan administrator failed to disclose changes to the Termination Pay Plan by failing to write an understandable Summary Plan description; by failing to provide them with a Summary Plan description; by failing to apprise them of their rights and obligations under the Plan; and by concealing changes made to the Plan. The plaintiffs also allege that Allis-Chalmers breached its fiduciary duties by failing to provide a written instrument meeting ERISA standards; by failing to hold in trust or segregate assets; and by failing to exercise the care, skill, and diligence of a prudent party in like circumstances. The plaintiffs say that they have suffered a loss of benefits and emotional distress due to these acts and omissions. Consequently, they are asking for compensatory damages and are also requesting attorney fees and costs.

## A. TERMINATION PAY

Before commencing this lawsuit the plaintiffs made a demand for termination pay benefits from the Plan administrator. *See* Appendix to Defendant's Memorandum in Support of Motion for Summary Judgment at 27–28. When benefits were denied, the plaintiffs asked for a review of the decision. *See Id.* at 29–31. On October 17, 1985, Allis-Chalmers' attorney, Dale Matschullat, again denied the benefit request, stating:

I am Allis-Chalmers General Counsel and Vice President and a member of the Allis-Chalmers Compensation and Benefits Committee—Review Committee (the Committee). The Committee has met and denied your August 26, 1985, appeal of the August 9, 1985, denial of the claim for Allis-Chalmers Salaried Employees' Termination Pay which you filed on behalf of 48 (later reduced to 47) former employees of Allis-Chalmers on July 24, 1985. I am writing you this letter to explain the reasons for that denial.

The 47 people you represent, a list of whom is attached as Exhibit A, all had their employment as salaried employees involuntarily terminated by Allis-Chalmers on February 24, 1985, when they were transferred without a break in that employment to A–C Compressor Corporation (A–C Compressor) and accepted its offers of employment. This was done as a result of and in connection with the sale by Allis-Chalmers to A–C Compressor of certain Allis-Chalmers operations. A–C Compressor continued those operations. In addition, A–C Compressor granted your clients credit for Allis-Chalmers service under all the employee benefit plans it maintains that contain service qualifications, *i.e.,* its vacation plan and disability plan. Allis-Chalmers has never granted Termination Pay under either the Allis-Chalmers Salaried Employees' Termination Pay Plan (as revised effective February 1, 1985) (the 1985 Plan) or any prior version of that Plan to former employees whose employment was involuntarily terminated following offers of employment by purchasers who continued former Allis-Chalmers operations where those persons had been employed, the same situation your clients are in.

Since your clients' Allis-Chalmers employment was terminated on February 24, 1985, their eligibility for Termination Pay is controlled by the 1985 Plan. The purpose of the 1985 Plan and all preceding versions of the Plan is to provide a financial cushion during the period of

unemployment which normally follows an involuntary termination, not to provide a windfall bonus simply because an individual's employment with A–C has been terminated. Thus, Section 2 of the 1985 Plan provides, in relevant part, that:

"A Covered Employee whose employment with the Company is involuntarily terminated from active service ... *other than ... termination following an offer of employment with another employer who continues a former Company operation* shall be an 'Eligible Employee', eligible for a termination payment." (Emphasis added.)

The Employment of each of your clients was so terminated and A–C Compressor continued a former Allis-Chalmers operation. Hence, there is no basis for the claim or the appeal and the original denial is hereby sustained.

You have also argued as a basis for the appeal that,

"... the employee handbook did not contain language to the effect that 'termination following an offer of employment with another employer who continues a former company operation' will disqualify the employee from receiving termination pay."

The booklet entitled, "Benefits for Salaried Employees" (the benefits booklet) states at pp. OBP–6 and 7 that,

"You will not be eligible if your termination ... follows an offer of employment with credit for service with Allis-Chalmers with another employer which continues a Company operation."

The requirement of "credit for Company service" was eliminated from the Plan provisions effective May 18, 1982, but the benefits book has not been revised to reflect that change.

However, it also states, at p. OBP–8, that,

"Complete details of the plan appear in the plan document which governs its operation and administration. The plan document would take precedence, of course, if there should be any conflict between its provisions and the information in this booklet."

A copy of the Plan document was always available for review by your clients. As a result, Section 2 of the 1985 Plan, which I have already quoted controls, and your appeal is also denied on that basis.

Even assuming the language which I have quoted from pp. OBP–6 and 7 of the benefits booklet applied, this claim and appeal would still have to be denied. As earlier stated, A–C Compressor *did* provide credit for Allis-Chalmers service. Your clients' employment was terminated following offers of employment, in the form of the transfer opportunities that were afforded them at A–C Compressor, which continued a former A–C operation. As I earlier stated, Allis-Chalmers has never paid Termination Pay in circumstances similar to your clients'. Thus, the appeal is denied.

*Id.* at 32–35. *See* also 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503–1(f).

■ In reviewing an administrator's decision to deny benefits, a federal court is to focus on the evidence before the administrator at the time of its final decision and is not to hold a *de novo* factual hearing on the question of the applicant's eligibility. *Wardle v. Central States Pension Fund,* 627 F.2d 820, 824 (7th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). All employee benefit plans must be established and maintained pursuant to a written instrument, *see* 29 U.S.C. § 1102(a)(1), and ERISA plan administrators are required to act consistently with the plan's written terms. Plan fiduciaries are required to act solely in "accordance with the documents and instruments governing the plan." *See* 29 U.S.C. § 1104(a)(1)(D). In fact the 1984 amendment to ERISA specifically forbids the assignment or alienation of plan benefits unless called for under the plan. *See* 29 U.S.C.A. § 1056(d) (West Supp.1987). *See also Cummings by Techmeier v. Briggs & Stratton,* 797 F.2d 383, 387 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 648, 93 L.Ed.2d 703 (1986).

In Allis-Chalmers' notice of denial of benefits, it stated that it had considered the

plaintiffs' demand under the terms of the 1985 Plan. However, the letter also stated that benefits would be denied under the 1977 Plan. The plaintiffs, to the contrary, believe that they are entitled to benefits under both versions of the Plan. However, they insist that the 1977 Plan should control because of ERISA disclosure violations by Allis-Chalmers.

### 1. *Controlling Plan*

■ The dispute over which version of the Plan should control must be resolved as a threshold matter. The reason for the parties' differing opinions is that the 1977 Plan's definition of "eligibility" was:

> A Covered Employee whose employment with the Company is involuntarily terminated from active service (or during the first 90 days of an excused absence or leave of absence), other than termination for cause, termination upon refusal or continued employment with the Company at any location, termination following an offer of employment *with credit for Company service* with another employer who continues a former Company operation, or termination at age sixty-two (62) or later with eligibility then to receive a normal or early retirement benefit under the Allis-Chalmers Salaried Employees' Retirement Plan shall be an "Eligible Employee" eligible for a termination payment.

Appendix to Defendant's Memorandum in Support of Motion for Summary Judgment at 4 (emphasis added). In 1982 the administrator purported to amend the Plan by deleting the words "with credit for Company service," as underlined above. This deletion was maintained in the 1985 version of the Plan, which also reduced the amount of benefits which an eligible employee receives. *Id.* at 16–21. The defendant concedes that the employee handbook, "Looking Beyond Your Paycheck," which contains a summary of the Plan, was never amended to reflect these changes.[1] The handbook paraphrases the 1977 "eligibility" section as follows:

> You will be eligible for termination pay if you are involuntarily terminated from active service or during the first 90 days of an excused absence or leave of absence. You will not be eligible if your termination is for cause, if it follows an offer of continued employment with the Company at any location, or follows an offer of employment with credit for service with Allis-Chalmers with another employer which continues a Company operation.

*Id.* at 24.

These eligibility provisions are relevant to the situation at hand because Allis-Chalmers' compressor operation, which employed the plaintiffs, was sold to A–C Compressor. The new owner continued the operation and employed all the plaintiffs without a break in service. The plaintiffs contend, however, that they were not given "credit for service" as provided in the handbook because A–C has no termination pay plan or pension and because vacation and disability benefits are provided on a reduced basis.

The defendant maintains that it is the Plan itself, not the handbook, which governs the interpretation of employee termination pay eligibility. *See Calhoun v. Falstaff Brewing Corporation,* 478 F.Supp. 357, 361 (E.D.Mo.1979). Allis-Chalmers points to the disclaimer in its handbook stating that:

> Complete details of the plan appear in the plan document, which governs its operation and administration. This plan document would take precedence, of course, if there should be any conflict between its provisions and the information in this booklet. (To review or obtain a copy, see the Introduction section.)

Appendix to Defendant's Memorandum in Support of Motion for Summary Judgment at 25. The plaintiffs, on the other hand, believe that because they were not properly advised of the Plan amendments, the amendments are not effective.

As noted above, all employee benefit plans must be "established and maintained

---

1. Plan summaries contained in employee handbooks are considered ERISA plan documents and are entitled to consideration as such. *See* *Eardman v. Bethlehem Steel Corporation Employee Welfare Benefit Plans,* 607 F.Supp. 196, 207 (W.D.N.Y.1984).

pursuant to a written instrument." *See* 29 U.S.C. § 1102(a)(1). ERISA also requires that participants and beneficiaries be furnished with a summary plan description. *See* 29 U.S.C. § 1022. This summary plan must contain certain information, including "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). The summary plan description must be updated at five-year intervals. *See* 29 U.S.C. § 1024(b)(1)(B).

■ In this case the former employees believe that the deletion of the phrase "with credit for Company service" modifying the phrase "offer of employment" was used as a basis to deny them severance benefits. In Count I they allege that they are eligible for benefits under the 1977 Plan and that the court should rule that the 1982 and 1985 Plans are invalid because the relevant amendments were not incorporated into the Summary Plan. In Count II the plaintiffs are claiming money damages for breach of the fiduciary duty to disclose material amendments. When plaintiffs are seeking to invalidate a Plan or to be awarded money damages based on disclosure violations, most decisional law requires a showing of active concealment or of some significant reliance upon or possible prejudice flowing from a faulty summary plan description. *See, e.g., Blau v. Del Monte Corporation,* 748 F.2d 1348, 1353 (9th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985) (active concealment); *Govoni v. Bricklayers, Masons & Plasterers,* 732 F.2d 250, 252 (1st Cir.1984) (collecting cases requiring reliance and prejudice).

There is no dispute that Allis-Chalmers did not amend the Plan Summary or otherwise notify the participants and beneficiaries under the Plan of the amendments. It is also clear that the 1982 amendment, which had the effect of narrowing the circumstances under which termination benefits had to be paid, was a "material" change. *See Baker v. Lukens Steel Company,* 793 F.2d 509, 512 (3d Cir.1986). However, there is no evidence of active concealment. The plaintiffs do not contend that Allis-Chalmers refused to let participants examine or obtain a copy of the Plan. *Cf. Adcock v. Firestone Tire & Rubber Company,* 616 F.Supp. 409 (M.D.Tenn. 1985) (administrator kept the Plan manual confidential).

Although at least one court has ruled that disclaimers in a plan summary, such as the one found in "Looking Beyond Your Paycheck," are invalid in light of ERISA's requirements of disclosure, *see Zittrouer v. UARCO Incorporated Group Benefit Plan,* 582 F.Supp. 1471, 1475 (N.D.Ga. 1984), most courts have ruled that, in the ordinary case, a fiduciary's failure to comply with ERISA's procedural requirements warrants no substantive remedy, *see Wolfe v. J.C. Penney Company,* 710 F.2d 388, 393 (7th Cir.1983), unless there has been flagrant and wholesale flouting of ERISA disclosure provisions. *Compare Blau v. Del Monte Corporation,* 748 F.2d 1348, 1353 (9th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985) (Del Monte kept the Plan document confidential; the policy was subject to no claims procedure; there was no summary plan description; and there was no provision to inform participants in writing of anything) *with DeAngelis v. Warner Lambert Company,* 641 F.Supp. 467, 472–73 (S.D.N.Y.1986) (multiple procedural violations did not rise to the level of substantive harm found in *Blau* ).

In support of the plaintiffs' allegations of reliance and prejudice, former employee Ernst Henne has testified that he relied on the handbook; that he stayed with Allis-Chalmers, in part, because of the benefit plans; and that he assumed that A–C Compressor would maintain the same benefit plans upon transfer. *See* Affidavit of Heiner Giese Authenticating Documents Submitted with Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment at Exhibit 7; Affidavit of Heiner Giese Authenticating Documents Submitted with Plaintiffs' Reply Brief in Support of Plaintiffs' Motion for Summary Judgment at Exhibit 1. Another plaintiff, Lawrence Wittman, has testified that he would have pursued alternate employment had he known about the 1982 amendment.

*See* Affidavit of Heiner Giese Authenticating Documents Submitted with Plaintiffs' Reply Brief in Support of Plaintiffs' Motion for Summary Judgment at Exhibit 2.

As Wittman's testimony indicates, even if salaried nonunion employees had known about the deleted phrase and the possible reduction in their severance benefits, their only choices would have been to terminate their employment voluntarily or to refuse to accept employment with A–C Compressor. Both these options would have rendered them ineligible for severance benefits under the Plan and they would be in no better position than they are now.

■ Although the court does not condone Allis-Chalmers' failure to update the employee handbook, it will not rule that the defendant's conduct renders the 1982 amendment invalid. As noted above, the handbook explicitly warns that the Plan governs in case of conflict. Furthermore, section 7 of the Allis-Chalmers Plan provides that: "Allis-Chalmers reserves the right to modify, amend or discontinue the Plan at any time without notice."[2] Appendix to Defendant's Memorandum in Support of Motion for Summary Judgment at 20. These unambiguous provisions preclude any claim based solely on the language of the summary plan description. *See Amato v. Western Union International, Inc.*, 773 F.2d 1402, 1418 (2d Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986).

Allis-Chalmers took no steps to notify the beneficiaries of the 1982 Plan amendment, but it took no affirmative steps to secrete the Plan document. *Cf. Adcock v. Firestone Tire & Rubber Company*, 616

F.Supp. 409–419 (M.D.Tenn.1985).[3] The 1982 amendment was adopted by the administrator almost three years before the plaintiffs' termination by Allis-Chalmers. Thus, the timing of the amendment does not give rise to an inference of bad faith as it might had the amendment preceded the termination by a shorter time. However, even when an amendment reducing or denying benefits has been made on the eve of severance, other courts have ruled that decisions to deny termination benefits were not arbitrary or capricious. *See, e.g., Ahne v. Allis-Chalmers Corporation*, 640 F.Supp. 912, 915 (E.D.Wis.1986); *Bruch v. Firestone Tire & Rubber Company*, 640 F.Supp. 519, 522 (E.D.Pa.1986). Based on these factors, the court rules that the provisions of the 1985 Plan govern this action.[4]

### 2. *Standard of Review*

■ In general, a Plan administrator's denial of welfare benefits may not be disturbed under ERISA unless the action was arbitrary or capricious. *See Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 208 (7th Cir.1985); *Wardle v. Central States Pension Fund*, 627 F.2d 820, 824 (7th Cir. 1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). The Seventh Circuit has explained this standard as follows:

When the decisionmaker makes an effort to decide according to the evidence and the legal rules, the result satisfies this legal test whether or not the decision is the one a court would have made. A decision is arbitrary or capricious when the decisionmaker "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered

---

**2.** ERISA was not designed to prohibit the modification of ancillary, unfunded contingent welfare benefits. An employer may change such benefits without violating ERISA. *See Sutton v. Weirton Steel Division of National Steel Corporation*, 724 F.2d 406, 410 (4th Cir.1983), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984).

**3.** The plaintiffs rely upon the reasoning in *Kaszuk v. Bakery & Confectionery Union & Industry International Pension Fund*, 791 F.2d 548 (7th Cir.1986) to support their position that failure to effectively disclose an amendment to an

ERISA plan renders the amendment ineffective. However, that case involved an election of benefits under a pension plan. Because of deficient notice, the plaintiff's decedent lost an opportunity to select joint and survivor annuities. The instant case involves unvested welfare benefits and the plaintiffs have lost no election opportunities.

**4.** The court need not consider the validity of the 1985 amendment altering the benefit calculation unless it concludes that the plaintiffs are entitled to severance benefits in the first instance.

an explanation for its decision that runs counter to evidence . . ., or is so implausible that it could not be ascribed to a difference in view or the product of . . . expertise." *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Company,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983).

The "arbitrary or capricious" standard calls for less searching inquiry than the "substantial evidence" standard that applies to Social Security disability cases. Although it is an overstatement to say that a decision is not arbitrary or capricious whenever a court can review the reasons stated for the decision without a loud guffaw, it is not much of an overstatement. The arbitrary or capricious standard is the least demanding form of judicial review of administrative action. Any questions of judgment are left to the agency, or here to the administrator of the Plan. *Bowman Transportation, Inc. v. Arkansas-Best Freight Systems, Inc.,* 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974); *cf. Center for Auto Safety v. Peck,* 751 F.2d 1336, 1342–43 (D.D.C.1985). Before condemning a decision as arbitrary or capricious a court must be very confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of the evidence.

*Pokratz,* 771 F.2d at 298–09.

■ The plaintiffs contend that a higher standard of review should be employed in cases "where the company or plan administrator acted in self-interest and denied benefits in order to save itself a substantial outlay." Plaintiffs' Brief in Support of Their Motion for Partial Summary Judgment at 13. Their evidence shows that Allis-Chalmers realized a considerable savings by denying them termination pay and that it may have received a higher price for the compressor operation due to the cut in benefits. They note that in *Jung v. FMC Corporation,* 755 F.2d 708, 711 (9th Cir. 1981), the court said that the fact that FMC's denial of benefits to the class avoided a very substantial outlay could be considered in applying the "arbitrary and ca-

pricious" standard. They also cite *Ahne v. Allis-Chalmers,* 640 F.Supp. 912 (E.D.Wis. 1986) for the proposition that less deference should be given to the trustees' decision when a pecuniary savings is realized by the defendant. However, *Ahne* involved a dispute over how to calculate the amount of termination benefits rather than over whether benefits should be paid at all. The Seventh Circuit has explained that:

> Our own cases have used the "arbitrary and capricious" standard only in reviewing a plan's decision that an applicant is not entitled to benefits. We have not held that questions about when and how to pay out undisputed benefits—as opposed to whether to pay benefits at all— are reviewable under the arbitrary and capricious standard.

*Teskey v. M.P. Metal Products, Inc.,* 795 F.2d 30, 32 (7th Cir.1986). Because a complete denial of welfare benefits is at issue in this case, the "arbitrary and capricious" standard, as enunciated in *Pokratz,* must be applied.

Other courts considering the denial of severance benefits under similar circumstances have concentrated on four factors in determining whether the plan administrator's denial was arbitrary or capricious: (1) whether the challenged interpretation of the plan is fair and reasonable in the context of the entire plan; (2) whether the challenged interpretation has been uniformly applied in similar situations; (3) whether the grant of severance benefits would render a double recovery of benefits to the plan participants; and (4) whether the plan administrator has violated ERISA's procedural requirements so consistently and flagrantly that a substantive harm has been worked on the plan participants. *See DeAngelis v. Warner Lambert Company,* 641 F.Supp. 467, 470–71 (S.D.N.Y.1986) (citing cases). The court has already considered the fourth factor and has found that the defendant's procedural failings, while not commendable, do not rise to the level of working a substantive harm. Therefore, the court will only consider the three remaining factors.

## (a) *Fair and Reasonable Interpretation*

First, the administrator's determination that the plaintiffs are not "eligible" for severance benefits under the Plan's definition of "eligibility" is not inconsistent with a reading of the Plan as a whole. Under the 1985 version of the Plan an employee is not eligible for severance benefits if the termination of employment follows "an offer of employment with another employer who continues a former Company operation." Appendix to Defendant's Memorandum in Support of Motion for Summary Judgment at 18. On February 25, 1985, Allis-Chalmers and A–C Compressor signed an agreement under which A–C would purchase the assets of the Allis-Chalmers compressor operation. On February 26, 1985, the selling company notified all employees of the agreement and of the new company's plan to retain the compressor operation employees. *Id.* at 1. Although the agreement was signed on February 25, the closing of the sale was not held until February 28. *Id.* at 65 (exerpt of deposition of William Conner). On that date the plaintiffs became employees of A–C and retained their same jobs and salaries without interruption.

Based on this sequence of events, the plaintiffs argue that their termination preceded rather than followed an offer of employment. They say that: "In this case, the plaintiffs were terminated effective February 24,[5] 1985, and did not de facto get an offer of employment from A–C Compressor Corporation until February 26, 1985. Thus, their termination *preceeded* rather than followed." Plaintiffs' Brief in Support of Their Motion for Partial Summary Judgment at 18. They also argue that there was really no "offer" of employment because the employees were merely transferred and had no choice in the matter.

These arguments are not persuasive. The plaintiffs offer no evidence to refute the testimony that the asset purchase of the compressor operation was not conclud-

ed until February 28—two days after Allis-Chalmers notified the plaintiffs that A–C Compressor planned to retain them as employees. Moreover, the plaintiffs advance no legal argument for considering the date of the agreement, rather than the date of closing, as the effective date of the sale. *See Phillips v. Amoco Oil Company*, 799 F.2d 1464, 1466–67 (11th Cir.1986). In addition, despite the informality of A–C Compressor's "offer" of employment, the plaintiffs' continuing employment constitutes an acceptance which they cannot disclaim at this late date. Thus, the court concludes that the plaintiffs' termination by Allis-Chalmers followed an offer of employment with A–C Compressor, a company which continued a former Allis-Chalmers operation. Consequently, the plaintiffs are not "eligible employees" under the definition found in the Allis-Chalmers' Termination Pay Plan.

This application of the term "eligible employee" is not inconsistent with any other provision of the Termination Pay Plan. In its letter denying benefits the Plan administrator explained that: "The purpose of the 1985 Plan and all preceding versions of the Plan is to provide a financial cushion during the period of unemployment which normally follows an involuntary termination, not to provide a windfall bonus simply because an individual's employment with A–C [Allis-Chalmers] has been terminated." Appendix to Defendant's Memorandum in Support of Motion for Summary Judgment at 32–33. The plaintiffs maintain that this explanation is improper because it is not explicitly found in the Plan itself. *See Blau v. Del Monte Corporation*, 748 F.2d 1348, 1355 (9th Cir.) (declining to defer to "secret purpose" of plan), *cert. denied,* —— U.S. ——, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985). When an administrator of a plan imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, or by its interpretation renders some provisions of the plan super-

---

**5.** The parties variously date the signing of the purchase agreement at February 24 or February 25.

fluous, the administrator's actions may be found to be arbitrary and capricious. *See Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 599 (2d Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). The plaintiffs' position is that severance benefits should be paid automatically following a termination unless the employee is immediately hired by another employer who credits service with the former employer toward a comparable package of benefits.

The 1977, 1982 and 1985 versions of the Plan contain identical "Forewards," which state:

> Salaried employees are not normally laid off in the short term as work levels fluctuate. With few exceptions, active salaried employment is commonly continued to bridge operational fluctuations.
>
> When salaried employees are separated from Company service in circumstances expected by the Company to be irreversible, for example, employment decline or elimination of position caused by such occurrences as discontinuance of a function, reorganization, and consolidation, release from service which results is normally a termination.
>
> Without excluding some limited exceptions in which a different provision is more appropriate, the purpose of this Plan is to provide for benefits on the occasion of involuntary termination from active employment.

*Id.* at 3, 10 & 17.

The court does not find this statement of purpose to be at odds with the administrator's interpretation. The compressor function, which employed the plaintiffs, was not discontinued and the plaintiffs' "active employment" was not terminated for any period of time. Moreover, other provisions in the Plan indicate that termination pay is meant to be a buffer for a period of total unemployment. Under section 4.02, termination pay is discontinued after an offer of reemployment, and under section 4.03 other arrangements may be applied in the event of a layoff. *See Id.* at 18 & 20.

In another case examined by the court, the severance pay plan at issue contained explicit language stating that the purpose of the termination benefits was "[t]o assist salaried employees through a period of readjustment while seeking another position." *Pinto v. Zenith Radio Corporation,* 480 F.Supp. 361, 364 (N.D.Ill.1979), *aff'd,* 618 F.2d 110 (7th Cir.1980). *See also Acquin v. Bendix Corporation,* 637 F.Supp. 657, 660 (E.D.Mich.1986) ("The stated purpose of the Plan is: To establish procedures governing the separation of salaried employees from employment with Bendix and to provide allowances and payments to assist eligible employees during the resulting transition period or alleviate conditions of hardship resulting from loss of employment."). It is true that the Allis-Chalmers Salaried Employees' Termination Pay Plan contains no such explicit language, but a plan need not be construed in favor of coverage when more than one interpretation is reasonable. *See Jung v. FMC Corporation,* 755 F.2d 708, 713 (9th Cir.1985).

In another case in which plaintiffs were immediately hired by a successor employer, the Seventh Circuit, in the absence of a specific statement of purpose, defined severance pay as remuneration paid to a terminated employee to cushion the financial blow that necessarily accompanies a period of unemployment following termination. *See Sly v. P.R. Mallory & Company, Inc.,* 712 F.2d 1209, 1211 (7th Cir.1983). *See also Ausloos v. Chromalloy American Corporation,* 626 F.Supp. 324, 327–28 (E.D.Wis.1986). This interpretation comports with the widespread and common understanding of the purpose of termination pay, even when that purpose is unstated in a Plan. *See, e.g., Acton v. Tosco Corporation,* 815 F.2d 116 (8th Cir.1986) (per curiam); *Holland v. Burlington Industries, Inc.,* 772 F.2d 1140, 1145 (4th Cir.1985), *cert. denied,* ——— U.S. ———, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986); *Jung v. FMC Corporation,* 755 F.2d 708, 713 (9th Cir.1985); *Coleman v. General Electric Company,* 643 F.Supp. 1229, 1241 (E.D. Tenn.1986); *DeAngelis v. Warner Lam-*

*bert Company*, 641 F.Supp. 467, 471 (S.D. N.Y.1986); *Pabst Brewing Company v. Anger*, 610 F.Supp. 214, 217, *aff'd*, 784 F.2d 338 (D.Minn.1985); *Dhayer v. Weirton Steel Division of National Steel Corporation*, 571 F.Supp. 316, 330 (N.D.W. Va.), *aff'd*, 724 F.2d 406 (4th Cir.1983), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984).

The plaintiffs, on the other hand, have provided no evidence supporting their position that severance pay is intended to constitute a "bonus" for past services. *See Pinto v. Zenith Radio Corporation*, 480 F.Supp. at 364 (rejecting this interpretation under similar circumstances). The plaintiffs' interpretation is not totally frivolous, but when both the administrator of an ERISA fund and rejected applicants offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control. *See Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, 601 (2d Cir.), *cert. denied*, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). The weight of authority decidedly supports the defendant's interpretation. Therefore, based on this precedent and in the absence of any inconsistency in the Plan itself, the court concludes that the administrator's interpretation of the Allis-Chalmers Salaried Employees' Termination Pay Plan's "eligibility" provision is reasonable and rational within the context of the entire document.

(b) *Consistent Application*

■ Second, the plaintiffs argue that the Plan administrator has not treated employees consistently under the Plan. They contend that, when Allis-Chalmers divested itself of other company operations without making termination payments to the "transferred" employees, the other acquiring companies at least provided comparable benefits. *See, e.g.*, Affidavit of Heiner Giese Authenticating Documents Submitted with Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment at Group Exhibit A Documents. However, it is well settled that:

[T]he fiduciary provisions of ERISA are not implicated in the sale of a business merely because the terms of the sale will affect contingent and non-vested future retirement benefits. This holding is supported by the fact that ERISA simply does not prohibit a company from eliminating previously offered benefits that are neither vested nor accrued. Moreover, the ERISA scheme envisions that employers will act in a dual capacity as both fiduciary to the plan and as employer. ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets.

*Phillips v. Amoco Oil Company*, 799 F.2d 1464, 1471 (11th Cir.1986). Allis-Chalmers had no fiduciary duty to ensure that acquiring companies offering continued employment to its employees would provide comparable fringe benefits. *See Coleman v. General Electric Company*, 643 F.Supp. 1229, 1238-40 (E.D.Tenn.1986). After the "credit for Company service" phrase was deleted from the Termination Pay Plan, the type of benefits provided by the acquiring company became irrelevant. *Id.* The only relevant facts governing a denial of termination pay are that the acquiring company has offered a job to the terminated employees and that the acquiring company has continued a company operation.

■ The plaintiffs have identified one similarly situated former Allis-Chalmers employee who they say was given termination pay after being offered employment with A-C Compressor. *See* Affidavit of Heiner Giese Authenticating Documents Submitted with Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment at Exhibit 14 (Affidavit of John E. Tallon). In response, the defendant explains that:

Tallon was involuntarily terminated by Allis-Chalmers as part of a reduction in force in March 1986, over one year after the sale to A-C Compressor and, through his own efforts, was hired immediately by A-C Compressor. Thus, Tallon's termination by Allis-Chalmers was not part of the divestiture and his hiring by A-C

Compressor resulted from his own efforts. Thus, Tallon's treatment is completely inapposite. Moreover, because Tallon's termination and receipt of benefits occurred long after the Plan Committee's decision on the Plaintiffs' claims, Tallon's case cannot be probative of whether that decision was arbitrary or capricious.

Allis-Chalmers Corporation's Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment at 14. *See also* Affidavit of Edwin C. Neuman. The court does not view Tallon's treatment as "completely inapposite," But a single inconsistent application does not vitiate the decision of the Plan administrator. *See Coleman v. General Electric Company*, 643 F.Supp. 1229, 1241 (E.D.Tenn.1986); *Acquin v. Bendix Corporation*, 637 F.Supp. 657, 667 (E.D.Mich.1986). *See also Bruch v. Firestone Tire & Rubber Company*, 640 F.Supp. 519, 525–26 (E.D.Pa.1986). Therefore, the court concludes that, on the whole, the challenged interpretation has been uniformly applied in similar situations.

(c) *Double Recovery*

 The final consideration to be made is whether granting severance benefits in this case would result in a double recovery for the plaintiffs. The plaintiffs protest that, far from garnering a double recovery, they have lost all "credit for service" for the purpose of calculating severance pay and other benefits because A–C Compressor does not have a termination pay benefit plan or a pension plan and offers reduced vacations and other welfare benefits. However, as explained above, because welfare benefit plans are not subject to the vesting provisions of ERISA, an employee can never accrue "vested" rights to severance pay or other welfare benefits under ERISA. *See Adcock v. Firestone Tire & Rubber Company*, 616 F.Supp. 409, 414 (M.D.Tenn.1985). Rather, the payment of a welfare benefit is contingent upon the happening of a triggering event. For example, Allis-Chalmers' payment of termination pay is contingent upon an employee becoming "eligible" under the Plan defini-

tion—a contingency which has not occurred to any of the plaintiffs. ERISA does not require that welfare benefits be nonforfeitable. *See Phillips v. Amoco Oil Company*, 614 F.Supp. 694, 710 (N.D.Ala.1985), *aff'd in part, rev'd in part and remanded*, 799 F.2d 1464 (11th Cir.1986). ERISA does not require that employers provide welfare benefits at all. *Id.* Therefore, the fact that A–C Compressor does not have a termination pay plan is irrelevant in determining whether the Plan administrator acted arbitrarily and capriciously. The test is whether payment of termination benefits would result in a double recovery, not whether the successor employer's decision not to maintain a severance pay plan might result in a contingent future loss to the plaintiffs.

Other courts have used their equitable powers to declare that the former employer remains liable on its obligations to pay termination benefits should an employee-plaintiff be involuntarily terminated by the successor employer. *See, e.g., Livernois v. Warner-Lambert Company, Inc.*, 723 F.2d 1148, 1155–57 (4th Cir.1983); *Adcock*, 616 F.Supp. at 424. These courts consider the benefit plan a contract and analyze the "inchoate rights" of the employees under contract principles. *Adcock*, 616 F.Supp. at 423–24. However, there is no authority for this position in the Seventh Circuit. In *Sly v. P.R. Mallory & Company, Inc.*, 712 F.2d 1209 (7th Cir.1983), the court of appeals ruled that a severance pay welfare benefit plan under ERISA is not a contract. *Id.* at 1213. Accordingly, under ERISA Allis-Chalmers is not liable to the plaintiff for termination pay now or in the future. *See Acton v. Tosco Corporation*, 815 F.2d 1161 (8th Cir.1986) (per curiam).

In sum, the defendant's decision to deny severance benefits in a situation in which the plaintiffs were offered employment without a break in service with another company which continued a former Allis-Chalmers operation was not arbitrary and capricious. The administrator's interpretation of the plan is fair and reasonable within the context of the Plan as a whole; with one possible exception, the challenged in-

terpretation has been uniformly applied in similar situations; denial of benefits has not resulted in the loss of a vested benefit; and the administrator's violations of ERISA procedural requirements are not so consistent or so flagrant that they worked a substantive harm on the plaintiffs. Therefore, summary judgment will be granted in favor of the defendant and will be denied to the plaintiffs on the first cause of action. *See Acton v. Tosco Corporation*, 815 F.2d 1161 (8th Cir.1986) (per curiam); *Anderson v. Ciba-Geigy Corporation*, 759 F.2d 1518 (11th Cir.), *cert. denied*, — U.S. ——, 106 S.Ct. 410, 88 L.Ed.2d 360 (1985); *Jung v. FMC Corporation*, 755 F.2d 708 (9th Cir.1985); *Sly v. P.R. Mallory & Company, Inc.*, 712 F.2d 1209 (7th Cir.1983); *Ausloos v. Chromalloy American Corporation*, 626 F.Supp. 324 (E.D.Wis.1986).

## B. ERISA DISCLOSURE AND FIDUCIARY DUTIES

For their second cause of action the plaintiffs allege that Allis-Chalmers Salaried Employees' Termination Pay Plan, as revised in 1982 and 1985, did not comply with ERISA disclosure requirements found in 29 U.S.C. §§ 1021–23 & 1025 in that Allis-Chalmers failed to:

(a) write a summary plan description in a manner calculated to be understood by the average plan participant (the 1977 plan did not define "credit for service");

(b) provide the plaintiffs with an updated plan description;

(c) reasonably apprise members of the class of their rights and obligations under the Plan;

(d) apprise the plaintiffs of changes made to the Plan.

*See* First Amended Complaint at ¶ 28. The court has already discussed these allegations under Part III(A), above, and has concluded that, although the administrator did violate disclosure requirements, the violations do not give rise to a cause of action for money damages for these plaintiffs. *See Wolfe v. J.C. Penney Company*, 710 F.2d 388, 393 (7th Cir.1983). *See also*

*Risch v. Waukesha Title Company, Inc.*, 588 F.Supp. 69, 72 (E.D.Wis.1984) (finding no cause of action for equitable relief), *aff'd*, 776 F.2d 1049 (7th Cir.1985).

The plaintiffs also claim that Allis-Chalmers, as both employer and Plan administrator, violated its fiduciary duties to the plaintiffs because:

(a) the written Plan did not meet the standards for an ERISA written instrument; *see* 29 U.S.C. § 1102;

(b) Allis-Chalmers failed to hold in trust or other segregated account all assets of the Plan, *see* 29 U.S.C. § 1103;

(c) Allis-Chalmers failed to exercise the care, skill, prudence and diligence of a prudent party in like circumstances by withholding benefits due, *see* 29 U.S.C. §§ 1103(c)(1) & 1104(a)(1).

*See* First Amended Complaint at ¶ 29.

The plaintiffs argue that the Plan does not meet the standards of 29 U.S.C. § 1102(b)(3) because it sets forth no procedures for amending the Plan and identifies no person who has the authority to amend the Plan. The defendant, however, points out that section 7 of the Plan provides that there is a procedure for amending the Plan and that section 6.02 identifies those persons with the authority to take any action concerning the Plan. *See* Appendix to Defendant's Memorandum in Support of Motion for Summary Judgment at 20. These provisions meet the minimum requirements of 29 U.S.C. § 1102(b)(3). *See Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir. 1986). And while the Plan does not specify the actual steps necessary to effect an amendment, the plaintiffs have not explained how they might have been injured by this omission.

As for the alleged failure to segregate assets, the defendant explains that the Plan was unfunded, so there were no assets to hold or to segregate. ERISA does not require the funding of welfare benefit plans. *See* 29 U.S.C. § 1081(a)(1). *See also Phillips v. Amoco Oil Company*, 614 F.Supp. 694, 709–10 (N.D.Ala.1985), *aff'd in part, rev'd in part and remanded*, 799 F.2d 1464 (11th Cir.1986). Finally, the

court has already ruled that the decision to deny severance benefits was not arbitrary or capricious, so the plaintiffs have no cause of action in that regard.

The plaintiffs have submitted no evidence raising an issue of material fact relating to any aspect of their second cause of action. Based on the undisputed facts, the court concludes that none of the defendant's alleged violations of disclosure or fiduciary obligations are actionable by the plaintiffs. Accordingly, the court will grant summary judgment to the defendant as a matter of law on the plaintiffs' second cause of action.

## IV. STATE LAW CLAIMS

The remaining nine causes of action, as outlined at the outset of this opinion, are all based on claims under Wisconsin statutory or common law. The defendant argues that the broad preemption provisions of ERISA preempt Counts III (breach of contract), IV (intentional breach of contract), VII (violation of Wisconsin wage payment law, Wis.Stat. § 109.03 (1985–1986), VIII (tortious breach of fiduciary duty), IX (breach of duty to act fairly and in good faith), X (intentional interference with prospective economic activity), and XI (intentional interference with employment relationship).

■ With certain stated exceptions, ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA. 29 U.S.C. § 1144(a). "State law" is defined to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). Courts have concluded that the preemption clause applies to both common-law and statutory causes of action. *See generally Pilot Life Insurance Company v. Dedeaux*, — U.S. —, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Metropolitan Life Insurance Company v. Taylor*, — U.S. —, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Metropolitan Life Insurance Company v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Ahne v. Allis-Chalmers Corpora-*

*tion*, 640 F.Supp. 912, 920 (E.D.Wis.1986); *Shaw v. Association of Machinists Pension Plan*, 563 F.Supp. 653, 658–59 (C.D. Cal.1983), *aff'd*, 750 F.2d 1458 (9th Cir.), *cert. denied*, 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985).

■ In *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983), the Supreme Court, citing legislative history and referring to the language and structure of the statute, construed the preemption clause in its broadest sense, and held that "[a] law 'relates to' an employee benefit plan ... if it has a connection with or reference to such a plan." Thus, ERISA preempts state claims even where the state statutory and common law under which the claims arise bear no inherent connection with ERISA-governed plans. *See Powell v. Chesapeake and Potomac Telephone Company of Virginia*, 780 F.2d 419, 421 (4th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986).

■ Based on the allegations of the complaint, as amended, the court concludes that all the state claims are "related to" ERISA benefit plans in that all the claims arise out of Allis-Chalmers' denial of termination pay benefits to the plaintiffs or out of Allis-Chalmers' failure to sell the compressor operation to a company which would provide "credit for service" under comparable benefit plans. For example, it is well-settled that state claims for breach of contract, such as those found in the third and fourth causes of action, are preempted. *See Ahne*, 640 F.Supp. at 920–21.

■ The defendant argues that, even if the fifth and sixth causes of action claiming violations of section 109.07 of the Wisconsin Statutes are not preempted, the plaintiffs do not state viable claims in those counts. Section 109.07 provides that:

(1) Every employer employing 100 or more persons in this state who has decided upon a merger, liquidation, disposition or relocation within or without the state, resulting in a cessation of business operations affecting 10 or more employes

shall promptly notify the department, any affected employe, any collective bargaining representative of any affected employe, and the clerk of any town, village, city or county in which the affected place of employment is located, in writing of such action no later than 60 days prior to the date that such merger, liquidation, disposition, relocation or cessation takes place. The employer shall provide in writing all information concerning its payroll, affected employes and the wages and other remuneration owed to such employes as the department may require. The department may in addition require the employer to submit a plan setting forth the manner in which final payment in full shall be made to affected employes. The department shall promptly provide a copy of the notice required under this subsection to the department of development and shall cooperate with the council for economic adjustment and the department of development in the performance of their responsibilities under §§ 15.157(5) and 560.15.

(2) Any employer who violates sub. (1), or who fails or refuses to provide all information or a plan for final payment as the department requires is guilty of a misdemeanor and may be fined not more than $50 for each employe whose employment has been terminated as a result of such merger, liquidation, disposition, relocation or cessation of business operations.

Wis.Stat. § 109.07 (1985–1986). The plaintiffs believe that they are entitled to compensatory and punitive damages under this section because Allis-Chalmers failed to notify the employees of the sale of the compressor operation to A–C sixty days in advance.

The defendant admits that it did not give sixty-day notice of the sale, but maintains that notice was unnecessary because the compressor operation remained an ongoing concern. Furthermore, Allis-Chalmers argues that there is no private cause of action under section 109.07 and that, even if there is, the plaintiffs cannot establish any injury from lack of notice because they remained employed without interruption.

The purpose of section 109.07 "is to provide an administrative mechanism whereby the state can monitor corporate shutdowns, and, clearly enough, a primary basis for this form of regulation is to insure that all affected employees are paid the remuneration owed them." *General Drivers & Dairy Employees, Local No. 563 v. Bake Rite Baking Company,* 580 F.Supp. 426, 431 (E.D.Wis.1984). The defendant points out that Wisconsin Senate Bill 115, introduced on January 1, 1986, sought to change the law and permit a private right of action for violation of section 109.07. *See* Appendix to Defendant's Memorandum in Support of Motion for Summary Judgment at 107–09. The fact that this bill was proposed and considered indicates that presently there is no private cause of action under section 109.07. The plaintiffs have produced no authority to the contrary. Therefore, the court concludes that the plaintiffs' fifth and sixth causes of action do not state cognizable claims.

As indicated above, Wisconsin's wage payment law, Wis.Stat. § 109.03 (1985–1986),[6] is preempted in this case by ERISA because the "wages" the plaintiffs are seeking are the denied severance benefits. *See Holland v. Burlington Industries, Inc.,* 772 F.2d 1140, 1147–48 (4th Cir.1985) (construing a similar North Carolina statute), *cert. denied,* —— U.S. ——, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986); *Gilbert v. Burlington Industries, Inc.,* 765 F.2d 320, 327–28 (2d Cir.1985) (construing a similar New York statute), *aff'd,* —— U.S. ——, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986) (mem.). Consequently, the plaintiffs have not stated a claim under their seventh cause of action.

6. Wis.Stat. § 109.03(2) (1985–1986) provides:
 (2) PAYMENT TO DISCHARGED OR RESIGNED EMPLOYES. Any employe, except a sales agent employed on a commission basis, not having a written contract for a definite period, who quits employment shall be paid in full within 15 days of the date of termination, and any employe who is discharged shall be paid in full within 3 days.

 The eighth, ninth, tenth and eleventh causes of action arise out of the sale of the compressor operation to A–C Compressor. The plaintiffs are making these claims against Allis-Chalmers in its capacity as employer as well as in its capacity as Plan administrator. All four claims are preempted by ERISA insofar as they are made against the administrator for benefits under the Allis-Chalmers Plan. However, insofar as the claims are made for prospective benefits against Allis-Chalmers as an employer for preventing the existence of comparable ERISA plans with A–C, the claims are not preempted. *See Scott v. Gulf Oil Corporation,* 754 F.2d 1499, 1505 (9th Cir.1985). Nevertheless, the plaintiffs have not stated viable claims in these four counts because an employer has no fiduciary duty to negotiate on behalf of its employees when selling a going concern. *See Coleman v. General Electric Company,* 643 F.Supp. 1229, 1238–40 (E.D.Tenn.1986). *See also Phillips v. Amoco Oil Company,* 614 F.Supp. 694, 718 (N.D.Ala.1985), *aff'd in part, rev'd in part and remanded,* 799 F.2d 1464 (11th Cir.1986); *Dhayer v. Wierton Steel Division of National Steel Corporation,* 571 F.Supp. 316, 328–29 (N.D.W. Va.), *aff'd,* 724 F.2d 406 (4th Cir.1983), *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984).

Based on the broad sweep of the ERISA preemption provision and the failure of the plaintiff to state claims under any state laws which are not preempted, the court will grant summary judgment as a matter of law in favor of the defendant on the third, fourth, fifth, sixth, seventh, eighth, ninth, tenth and eleventh causes of action.

### ORDER

For the reasons explained above, the court ORDERS that the defendant's Motion for Summary Judgment (filed April 1, 1987) IS GRANTED.

IT IS FURTHER ORDERED that the plaintiffs' Motion for Partial Summary Judgment (filed April 1, 1987) IS DENIED.

IT IS FURTHER ORDERED that judgment be entered in favor of the defendant on all claims brought by the plaintiffs.

IT IS FURTHER ORDERED that this action IS DISMISSED.

Done and Ordered in Chambers at the United States Courthouse, Milwaukee, Wisconsin this 22nd day of May, 1987.