Albert MARTIN, Plaintiff,

v.

William J. McCARTHY, et al., Defendants.

Civ. A. No. 80–2603–C.

United States District Court, D. Massachusetts.

Aug. 7, 1981.

William D. Joyce, Philip H. Levine, Boston, Mass., for plaintiff.

James T. Grady, Grady & McDonald, Boston, Mass., for defendants.

MEMORANDUM

CAFFREY, Chief Judge.

On November 6, 1980, Albert Martin, a member of Local 379 of the International

Brotherhood of Teamsters, commenced this action against the Trustees of the New England Teamsters and Trucking Industry Pension Fund (the Pension Fund) in the Boston Municipal Court Department of the Trial Court of Massachusetts. He alleged two causes of action. First, he alleged that he was entitled to monthly payments from the Pension Fund for a period from May 9, 1977 through November 13, 1979. During that time the plaintiff says he was disabled and not working because of a work-related injury. Second, he alleged that the Trustees of the Pension Fund, by withholding payments during that period, committed an unfair and deceptive act in violation of M.G.L. c. 93A. On November 20, 1980, the defendants removed the case to this Court. Pursuant to 29 U.S.C. § 1132(e)(1), this Court took jurisdiction over the case. On the same date, the defendants also filed an answer to the plaintiff's complaint which denied that the plaintiff was entitled to any benefits from the Pension Fund and denied that their refusal to disburse any such funds was a violation of M.G.L. c. 93A.

On June 15, 1981 both parties submitted the case on a stipulation of facts and several exhibits. They also filed trial briefs.

I find and rule as follows: William Martin suffered a work-related injury in May of 1977. On March 28, 1978, he submitted a disability pension application to the Pension Fund. At the time he filed the application, he also had a claim for workmen's compensation benefits pending before the Industrial Accident Board. The Trustees for the Pension Fund processed the plaintiff's application but withheld payment of benefits until after the resolution of the claim for compensation benefits. Under the New England Teamsters and Trucking Industry Pension Plan (Pension Plan), the Trustees may setoff funds payable from the Pension Fund against workmen's compensation benefits received by an employee. Where a claim is pending before the Industrial Accident Board at the time an application for pension benefits is received, the Trustees do not pay any benefits until the outstanding claim is resolved. This policy promotes careful management of the Pension Fund and makes it unnecessary for the Trustees to recover funds previously paid to an employee who later receives workmen's compensation payments for the same period of time.

The plaintiff first applied for benefits from the Pension Fund on March 28, 1978. Under § 8.01 of the Pension Plan the plaintiff was not entitled to receive payments from the Pension Fund until "the first day of the third month" after the application was filed. Consequently, if the plaintiff is entitled to any benefits, his payments would include the period beginning June 1, 1978 and ending November 31, 1979. Since there is no dispute that the plaintiff was entitled to $384.00 per month, the maximum total of funds the plaintiff could be entitled to is $6,912.00.

The defendants argue, however, that from June, 1978 through November, 1979, the plaintiff received workmen's compensation payments. Citing § 5.24(c) * of the Pension Plan, the defendants claim that they were entitled to reduce the amount of pension benefits by the amount of workmen's compensation that the plaintiff received during the period from June, 1978 through November, 1979. The plaintiff has not challenged the validity of this provision in the Pension Plan. Recently, in *Alessi v. Raybestos-Manhattan, Inc.*, —— U.S. ——, 101 S.Ct. 1895, 68 L.Ed.2d 402, the Supreme Court of the United States held that such provisions are lawful and do not contravene the policies of ERISA. Consequently, I rule that if the plaintiff received any workmen's compensation payments for the period when he was eligible to receive pension benefits, the pension benefits must be proportionately reduced.

Whether the plaintiff received workmen's compensation benefits turns on how the terms of the lump-sum settlement of

---

* § 5.24(c) states:

Any pension benefits payable for any month for which the Pensioner or Participant received worker's compensation benefits shall be offset by the amount of such worker's compensation benefits.

the plaintiff's workmen's compensation claim should be interpreted. After his March, 1977 injury, the plaintiff filed a claim for compensation under M.G.L. c. 152, § 34 which provides for weekly payment during a time of total incapacity resulting from a work-related injury. On November 13, 1979, the Industrial Accident Board awarded a lump-sum settlement in the amount of $33,054.59. Out of this total settlement several deductions were made to satisfy legal obligations of the plaintiff for attorney's fees, medical expenses and a refund to the Department of Public Welfare. Also, a payment was made to the plaintiff's wife in release of any inchoate rights arising out of the injury to her husband. The insurance carrier made these payments on behalf of the plaintiff directly to the parties involved. As a result, the plaintiff personally received $8,923.50 as his portion of the lump-sum settlement. This payment was expressly made in settlement of the plaintiff's "claim for *past due benefits*" under M.G.L. c. 152, § 34. Thus, all these payments, with the exception of those due to the plaintiff's wife, were intended to compensate the plaintiff for workmen's compensation benefits he would have received during the thirty-month period in which he was incapacitated.

The plaintiff contends that, because the lump-sum settlement was *in compromise* of a right of claim, none of the funds received were intended to represent past due compensation. Rather, plaintiff argues that the *quid pro quo* of the settlement was the plaintiff's agreement to discontinue his claim for benefits in exchange for receiving the funds. As such, he contends that the payment did not constitute workmen's compensation benefits and therefore, could not be offset, under § 5.24(c) of the Pension Plan, against the plaintiff's pension benefits.

The Court finds this argument unpersuasive and without merit and declines to view the lump-sum settlement in such a convoluted manner. The settlement states that the "employee would best be served by this lump-sum settlement which pays him the greater part of § 34 benefits to which he might have been entitled." If the claim had proceeded to a hearing and the employee was awarded compensation, the amount of the award under M.G.L. c. 152, § 34 would have been calculated on a weekly basis. Clearly, such an award would be payment of workmen's compensation benefits. It is only reasonable to view the settlement agreement in the same light. The *quid pro quo* of the settlement was the plaintiff's agreement to accept something less than full compensation in exchange for discontinuing his claim. I rule that all funds paid as part of the lump-sum settlement, with the exception of the payment to the plaintiff's wife, were workmen's compensation benefits and the Trustees of the Pension Fund were entitled to setoff such payments against payments due from the Pension Fund.

Therefore, the sole remaining issue is the validity of the manner in which the amount of setoff was calculated by the Trustees. The Court concludes that the Trustees were correct in deciding that the plaintiff was not entitled to any payments from the Pension Fund during the period from June, 1978 through November, 1979. Under the terms of the settlement agreement, the plaintiff received $8,923.79 as a direct payment and $15,207.00 as indirect payment for claims brought under M.G.L. c. 152, § 34. For purposes of administrative convenience, the insurance carrier mailed payments for the outstanding claims against the plaintiff directly to the appropriate parties. This procedure in no way changes the character of such funds as workmen's compensation benefits. Only that portion of the settlement received by the plaintiff's wife, which released separate and distinct legal rights, was not workmen's compensation payments. Consequently, the plaintiff received $24,130.79 in compensation benefits under the lump-sum settlement. Since the settlement payment covered a thirty-month period, the plaintiff's monthly payments averaged $804.37 per month during that period. Application of the offset procedure required by § 5.24 of the Pension Plan establishes that the plaintiff was not entitled to receive any benefits from the Pension Fund since he was eligible

to receive only $384.00 per month from that source. I rule that the Trustees acted legally in refusing to pay the plaintiff disability pension benefits and, therefore, judgement will be entered in their favor with respect to count one.

■ Little need be said about the plaintiff's second claim. The Court notes that there is substantial doubt as to whether the Trustees of the Pension Fund are subject to suit under M.G.L. c. 93A. *See* 29 U.S.C. § 1144 (ERISA provisions supercede any and all state law). Further, with respect to the merits of the allegation of unfair and deceptive practices, the plaintiff failed to show any wrongful conduct on the part of the Trustees. The record indicates that the funds were withheld pursuant to a policy which was uniformly and fairly applied to all similar cases. Whenever a workmen's compensation claim is outstanding at the time an application for pension benefits is received, the Trustees withhold benefits until the compensation claim is resolved. This practice makes it unnecessary to recoup pension benefits if the employee receives workmen's compensation at a later date. Quite clearly, the Trustees committed no unfair or deceptive practices in the course of their dealings with the plaintiff. Judgement will be entered for the defendants with respect to the claim under M.G.L. c. 93A.