United States Court of Appeals,

Fifth Circuit.

No. 91–1368.

Murphy R. GODWIN, Plaintiff-Appellant,

v.

SUN LIFE ASSURANCE COMPANY OF CANADA, Defendant-Appellee.

Dec. 31, 1992.

Appeal from the United States District Court for the Southern District of Mississippi.

Before JOLLY and EMILIO M. GARZA, Circuit Judges, and SHAW, District Judge.[*]

EMILIO M. GARZA, Circuit Judge:

Murphy R. Godwin alleges that Sun Life Assurance Company of Canada ("Sun Life") violated the Employee Retirement Income Security Act of 1974 ("ERISA")[1] by (a) failing to provide plan information that Godwin had requested; (b) illegally offsetting his award under the plan with Social Security old age benefits; and (c) erroneously calculating an offset for workers' compensation benefits. The district court granted Sun Life's motion for summary judgment. Godwin appeals, and, finding no error, we affirm.

I

Godwin began work for School Pictures, Inc., in 1966. In the mid-1970s, Godwin became a participant in a group long-term disability plan issued to School Pictures by Sun Life. Subsequent to his participation, the plan was amended five times, the last amendment taking effect in December 1983. On December 19, 1984, Godwin sustained an injury in the course of his employment. He continued to work, however, until November 4, 1986, when a second employment-related injury left him disabled. On November 18, 1986, School Pictures terminated Godwin—then sixty-seven years old—for

[*]Chief Judge of the Western District of Louisiana, sitting by designation.

[1]29 U.S.C. § 1001 et seq. (1988).

health reasons.  After he was terminated, Godwin applied to Sun Life for benefits under the plan.

Sun Life determined that Godwin was entitled to fifteen months of benefits (eighteen months less a three-month waiting period), and it issued Godwin two checks for a total of $1,773.11.  Those checks represented three months of benefits at $591.04 a month.[2]

---

[2]With respect to Godwin's application for benefits, Sun Life issued one check for $1,182.07, representing pay period 1 March 87 to 30 April 87 and a second check for $591.04.  The amounts of these checks were calculated as follows:

1st check

| March 1987 | Gross Monthly Benefit | $1,188.95 |
|---|---|---|

Less Workers Comp. Offset

—estimated    576.00

612.95


| April 1987 | Gross Monthly Benefit | $1,188.95 |
|---|---|---|

Less Workers Comp. Offset

—estimated    576.00

612.95


Less FICA Tax    43.83

$1,182.07


2nd Check

| May 1987 | Gross Monthly Benefit | $1,188.95 |
|---|---|---|

Less Workers Comp. Offset

—estimated    576.00

However, Sun Life later recalculated the benefits to which Godwin was entitled, included an offset of $725 a month for social security benefits, and determined that the offsets exceeded benefits.[3]  Subsequently, the Mississippi Workers' Compensation Commission approved Godwin's workers' compensation claims with regard to his two on-the-job injuries.  After deducting attorneys fees and expenses, Godwin received $9,941.62.[4]

In July 1989, Godwin brought suit in district court against Sun Life, claiming that Sun Life's actions violated ERISA.  The parties filed cross-motions for summary judgment, and the district court granted Sun Life's motion.  Godwin appeals.

II

Godwin contends (a) that he is entitled to statutory penalties under ERISA because Sun Life failed to provide plan information that Godwin requested;  (b) that Sun Life's offset of social security old age benefits was illegal because the offset was not

---

Less FICA tax  21.91

$591.04

[3]Sun Life arrived at the new figures under a 1981 amendment to the plan that offset "any amount of Old Age Income provided to the employee under the Social Security Act."  Sun Life determined that, pursuant to the policy (as amended), Godwin was entitled to receive, during his fifteen-month period, $1188.95 monthly, less a $576 monthly workers' compensation offset and a $725 offset representing Godwin's monthly payment from the Social Security Administration.  These calculations result in a negative $112.05; however, the plan provides for a minimum monthly benefit of $50.

[4]The gross amount for both claims was $15,000.  The settlement of Godwin's claims were general in nature, citing, among other things, payment for disability, loss of wage-earning capacity, penalties, interest, and all medical expenses which Godwin might incur in the future or which may have been incurred in the past.

set forth in the original policy and Godwin never received notice that the plan was amended to include the offset; and (c) that Sun Life erroneously calculated an offset for workers' compensation benefits.

A

Godwin contends that he is entitled to penalties due to Sun Life's failure to supply certain requested information. Godwin alleges that, in July 1985—prior to his application for disability benefits—he requested from Sun Life information relating to the benefit plan and that, over the course of the next four years, Sun Life and School Pictures refused his requests. Godwin argues that Sun Life's failure to provide the information violates ERISA.

Section 502(c)(1) of ERISA provides, in relevant part, that:

> Any administrator who ... fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal and the court may in its discretion order such relief as it deems proper.

29 U.S.C. § 1132(c). The term administrator is defined as:

> (i) the person specifically so designated by the terms of the instrument under which the plan is operated;
>
> (ii) if an administrator is not so designated, the plan sponsor....

29 U.S.C. § 1002(16)(A).

The district court's summary judgment against Godwin was based, in part, on its conclusion that, because no administrator was named in the policy, School Pictures was the sponsor and,

therefore, the administrator, pursuant to 29 U.S.C. § 1002(16)(A).
The district court thus found that an action under 29 U.S.C. § 1132
did not exist against Sun Life. *See* Record on Appeal, vol. 2, at
444-45. The district court also discounted Godwin's argument that
Sun Life was a de facto administrator of the plan. The district
court concluded that Godwin was not prejudiced by the alleged
failure to disclose information, and that the question whether Sun
Life was a de facto administrator thus was irrelevant.[5]

Godwin asks us to recognize Sun Life as a de facto
administrator and argues that ERISA does not require a claimant to
show prejudice in order to be entitled to penalties.[6] In support

--------------

[5]Record on Appeal, vol. 2, at 446:

> [E]ven if Sun life is a plan fiduciary and had a duty
> to provide Godwin the information he requested, Godwin
> has not demonstrated that any prejudice to his right to
> benefits resulted from a failure by Sun Life to provide
> the requested information.

[6]Godwin cites *Curry v. Contract Fabricators Inc. Profit
Sharing Plan,* 891 F.2d 842 (11th Cir.1990), in support of this
argument. In *Curry,* the defendant argued that the plaintiff
should not recover under section 1132 because he suffered no
prejudice due to the defendant's denial of benefits. The court
found that the district court's decision whether to impose
penalties under this section rested within its discretion. The
court stated:

> In exercising its discretion, therefore, the trial
> court may undoubtedly consider whether a denial of
> information prejudiced a plaintiff, but prejudice is
> not a prerequisite to an award of civil penalties.

*Curry,* 891 F.2d at 847 (citations omitted) (discussing *Paris
v. Profit Sharing Plan For Employees of Howard B. Wolf,
Inc.,* 637 F.2d 357 (5th Cir.), *cert. denied,* 454 U.S. 836,
102 S.Ct. 140, 70 L.Ed.2d 117 (1981)); *see also id.* at 848
("A careful reading of *Paris,* therefore, suggests that
prejudice was merely one factor (although an important one)
that the trial court considered in exercising its discretion
whether to award a civil penalty under section
1132(c)....").

of this argument, Godwin reminds us of our decision in *Fisher v. Metropolitan Life Ins. Co.,* 895 F.2d 1073, 1077 (5th Cir.1990).

In *Fisher,* the plaintiff suggested that the plan insurer, Metropolitan, should be regarded as a de facto plan administrator because Metropolitan had been delegated responsibility for evaluating and administering claims. Noting that "Fisher's argument that Metropolitan should be regarded as a *de facto* administrator has intuitive appeal[,]"[7] we nevertheless declined to recognize Metropolitan as the de facto administrator because, in any event, we found no abuse of discretion on the part of the district court in refusing to award the plaintiff penalties under section 1132(c).

As in *Fisher,* we need not here resolve the question whether Sun Life should be regarded as a de facto administrator, thus entitling Godwin to penalties under 29 U.S.C. § 1132. *See Paris v. Profit Sharing Plan For Employees of Howard B. Wolf, Inc.,* 637 F.2d 357, 362 (5th Cir.), *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981) ("The decision to grant relief under 29 U.S.C. § 1132(c) is committed to the discretion of the trial judge."). Although section 1132 does not require the claimant to show he was prejudiced to be entitled to penalties,[8] we suggested in *Paris* that prejudice is one factor a district court may consider in exercising its discretion. *See Paris,* 637 F.2d at 362 ("The plaintiffs have not attempted to demonstrate that they were prejudiced by the

---

[7]*Fisher,* 895 F.2d at 1077.

[8]The express statutory language does not require a demonstration of prejudice. *See* 29 U.S.C. § 1132(c).

alleged failure to respond, and we cannot say the district court abused its discretion.");  *accord Curry v. Contract Fabricators Inc. Profit Sharing Plan,* 891 F.2d 842, 847 (11th Cir.1990) (citations omitted).  The district court's consideration of a lack of prejudice in denying an award of penalties was, therefore, not an abuse of discretion.

B

Godwin next contends that the 1981 amendment to the Sun Life plan which mandates an offset for "any amount of Old Age Income provided to the employee under the Social Security Act"[9] does not apply to him because he had no notice of the amendment when he applied for benefits.

We begin with the premise that, as a general rule, Social Security old age income may be offset against monthly disability payments.  *See Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 514–15, 101 S.Ct. 1895, 1901–02, 68 L.Ed.2d 402 (1981) (integration of employee benefits with other sources of income available to employees is permissible);  *see also Fisher,* 895 F.2d at 1076 n. 1 (noting that the Supreme Court has upheld the validity of integration provisions, which Congress had specifically approved in enacting ERISA).  We then determine whether the 1981 amendment to the Sun Life plan is valid and applicable to Godwin.  That is, did Sun Life comply with the ERISA requisites for plan modifications with respect to Godwin?[10]

---

[9]*See supra* note 3.

[10]The amendment procedure, in general, was proper.  Written amendments were authorized under the plan if agreed to by a representative of the company.  *See* Record on Appeal, vol. 2, at

ERISA requires that participants and beneficiaries be furnished with a summary plan description. *See* 29 U.S.C. § 1022. This summary plan description must contain certain information, including "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits ..." 29 U.S.C. § 1022(b). Sections 102(a)(1) and 104(b)(1) of ERISA require that a copy of the summary plan description and all modifications and changes be furnished to participants and beneficiaries not later than 210 days after the plan year in which the change is adopted. *See* 29 U.S.C. §§ 1022(a)(1) and 1024(b)(1), *amendment noted in* 29 U.S.C.A. § 1024(b)(1) (Supp.1991).

In support of its assertion that Sun Life gave proper notice of the amendment, Sun Life presented to the district court the affidavit of its Director of Group Services and Administration—Dale L. Kurtz.[11] In his affidavit, Kurtz testified that Sun Life prepared and sent to School Pictures for distribution updated summary plan description booklets following each amendment to the School Pictures plan.[12] Godwin, however, maintains that he never

---

249. Sun Life presented to the district court the affidavit of its Senior Claims Officer—J. Neville Meehan—who testified that the 1981 amendment was approved in writing by A. Don Goss—Vice President of Finance for School Pictures. *See* Record on Appeal, vol. 2, at 235.

[11]Record on Appeal, vol. 2, at 283–286.

[12]Record on Appeal, vol. 2, at 285:

> Employees of School Pictures, Inc. were notified of the terms and conditions of the School Pictures LTD plan by means of summary plan description booklets ("SPD's") which were composed by Sun Life according to instructions received from School Pictures, Inc. regarding desired changes in coverage. The SPD's were printed in Massachusetts and then forwarded to School

received notice of the amendment, and he argues that such personal notice was required under ERISA.

The district court, in rejecting Godwin's argument that the 1981 amendment was invalid as to him for lack of notice, relied principally on two cases interpreting the ERISA notification provisions: *Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488 (2d Cir.1988) and *Henne Corp. v. Allis-Chalmers Corp.,* 660 F.Supp. 1464 (E.D.Wis.1987). The district court found:

> Wherever fault might lie for the alleged nonreceipt by Godwin of notice of the [1981] amendment, the amendment to the employee welfare benefit plan at issue is valid even in the absence of his knowledge of its existence. *Henne* [ ], 660 F.Supp at 1474-75 (amendment valid though its adoption was never noticed by employer); *see also Moore,* 856 F.2d at 491-92 (employer could alter benefit plan where summary plan descriptions unambiguously reserved the right to change or discontinue welfare benefit plan). That is because when benefit plans may by their terms be modified at any time and [when] an employer makes no attempt to conceal amendments, an employee cannot seek to avoid application of a valid amendment by claiming he never received notice of its adoption. *Henne,* 660 F.Supp. at 1475.

Record on Appeal, vol. 2, at 449-50. The district court found, in the alternative, that Godwin was not prejudiced by his lack of knowledge of the amendment. *Id.*

We agree with the district court that an amendment to a welfare benefit plan is valid despite a beneficiary's lack of personal notice, unless the beneficiary can show active concealment of the amendment, *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1352 (9th Cir.), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152

---

Pictures' home office in Jackson, Mississippi, for distribution to covered employees. This same procedure was followed on each occasion when the School Pictures LTD plan was amended.

(1985),[13] or "some significant reliance upon, or possible prejudice flowing from" the lack of notice. *Govoni v. Bricklayers, Masons and Plasterers Int'l Local No. 5 Pension Fund,* 732 F.2d 250, 252 (1st Cir.1984). Here, there is no evidence of active concealment, and Godwin can show neither significant reliance nor prejudice from his alleged lack of notice.[14] The 1981 amendment allowing an offset for old age Social Security benefits is thus valid and applicable to Godwin.[15]

C

Godwin's final argument is that the offset for workers' compensation benefits was incorrectly calculated. The exclusion clause in question provides, in relevant part:

The Monthly Indemnity of an employee at any date will be the

---

[13]*But see Hozier v. Midwest Fasteners, Inc.* 908 F.2d 1155, 1166–69 (3d Cir.1990) (analyzing and disagreeing with *Blau* ). The Third Circuit in *Hozier* held that procedural reporting violations are irrelevant to an appellate court's construction of the terms of a welfare benefit plan. *Id.* at 1168. The Third Circuit, however "d[id] not decide the different question whether reporting and disclosure violations are relevant or dispositive in determining the validity of plan amendments." *Id.* at 1168–69 n. 15.

[14]Indeed, not only was Godwin not prejudiced by the 1981 amendment, he benefitted from it. Under the unamended plan, Godwin would not have been eligible for any benefits when he became disabled at sixty-seven because benefits were terminated at age sixty-five. Thus the amendment that Godwin complains of was the same amendment which made him eligible for any benefits at all.

[15]As the Third Circuit noted in *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155 (3d Cir.1990), invalidating a plan amendment for disclosure violations is problematic even in cases involving active concealment or prejudice. *See id.* at 1168–69 n. 15 ("One difficulty with striking down a plan amendment on the basis of reporting and disclosure violations ... is that the failure to report and disclose a proposed amendment does not ripen into a violation until 210 days *after* the end of the plan year in which the change is *adopted.*" (citation and quotation omitted)).

amount of the employee's insurance at such date, less the sum of the following amounts:

* * * * * *

(5) any indemnity provided for the employee under any Workmen's Compensation law or similar legislation.

Record on Appeal, vol. 2, at 264. At the time Godwin's disability payments became payable under the policy, Godwin's workers' compensation claim was controverted. Because Godwin was not then receiving workers' compensation benefits, Sun Life relied upon reference manuals setting forth the maximum weekly amount of workers' compensation available in Mississippi and determined that $576 should be offset monthly.[16]

Godwin does not dispute Sun Life's authority to offset benefits with workers' compensation payments. But he does challenge Sun Life's calculation of the workers' compensation offset, reasoning that the payment for the worker's compensation settlements occurred after Godwin's benefit period and that his lump sum workers' compensation settlements also included payment for items that had nothing to do with his disability.[17] Godwin suggests that the settlement payments should have been prorated over 450 weeks. Sun Life, on the other hand, contends that Godwin's entire settlement award should be applied as an offset.

The validity of workers' compensation offsets is well-established. *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S.

---

[16]This amount was the maximum monthly benefit allowed by state law for the injury of December 19, 1984. The total disability payment was $126 per week, for 450 weeks, or $56,700 in total. *See* Miss.Code Ann. § 71-3-17 (1972).

[17]For example—penalties, interest, and medical benefits.

504, 514–15 & 526, 101 S.Ct. 1895, 1901–02 & 1908, 68 L.Ed.2d 402 (1981).  Our inquiry is limited to the district court's conclusion that Sun Life did not erroneously calculate the amount of the workers' compensation offset.  Because this is an action brought under 29 U.S.C. § 1132(a)(1)(B), we review de novo the district court's decision.  *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989).

The district court, in allowing an offset for the entire amount of the workers' compensation award rather than a prorated amount, noted that the Sun Life plan mandated an offset for "any" workers' compensation award.  Record on Appeal, vol. 2, at 453.  As noted *supra,* the precise words of the exclusion clause provide that "any indemnity provided for the employee under any Workmen's Compensation law or similar legislation" may be offset.  We find these words to be clear and unambiguous:  "any indemnity" means "any indemnity".

Godwin cites two cases as supporting the proposition that only a prorated portion of the workers' compensation should have been offset—*Martin v. McCarthy,* 520 F.Supp. 783 (D.C.Mass.1981) and *Sciarotta v. Bowen,* 837 F.2d 135 (3d Cir.1988).  As Sun Life points out, however, *Sciarotta* addresses an extremely narrow issue—the Social Security Administration's interpretation of the Social Security Act—which is not applicable to ERISA.

*Martin* likewise is inapplicable to the case sub judice.  In *Martin,* a district court found 1) that the trustees of an ERISA-regulated pension plan properly withheld pension benefits pending the settlement of a workers' compensation claim;  and 2)

that the trustees of the plan properly refused to pay pension benefits once the workers' compensation claim was settled and the amount of the workers' compensation benefits exceeded the amount of the pension benefits. *Martin,* 520 F.Supp. at 784–86. Godwin is correct when he states that the district court in *Martin* prorated the workers' compensation benefits over the concurrent disability period. However, the district court, in doing so, relied upon the express language of the plan in question, which provided that "[a]ny pension benefits payable for any month for which the Pensioner or Participant received worker's compensation benefits shall be offset by the amount of such worker's compensation benefits." *Id.* at 784 n. *. The language of the *Martin* plan arguably mandated a monthly offset of the prorated workers' compensation benefit. There is no such language in Godwin's Sun Life plan.

We conclude, therefore, that Sun Life was entitled to reduce Godwin's disability benefits by the entire amount he received due to workers' compensation. *See Barklage v. Metropolitan Life Ins. Co.,* 614 F.Supp. 51, 59 (W.D.Mo.1985) (receipt of lump sum rather than monthly award of workers' compensation does not bar an offset).

### III

For the foregoing reasons, we AFFIRM.

_____

_____

_____

_____