Michael BROOKS, Plaintiff,

v.

NORTH AMERICAN PHILIPS COR-
PORATION, Metropolitan Life In-
surance Company, Defendants.

No. 99–CV–6009L.

United States District Court,
W.D. New York.

March 7, 2001.

Lawrence I. Heller, Rochester, NY, for Plaintiff.

James J. Navagh, Feldman, Kieffer & Herman, LLP, Buffalo, NY, for Defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

This is action under the Employee Retirement Income Security Act ("ERISA"),

29 U.S.C. § 1001 *et seq.* Plaintiff, Michael Brooks, seeks benefits under a Long Term Disability Plan ("the Plan") sponsored by his employer, defendant North American Philips Corporation ("Philips") and insured by defendant Metropolitan Life Insurance Co. ("MetLife"). Both sides have moved for summary judgment.

### FACTUAL BACKGROUND

Plaintiff began working for Philips in 1983. Plaintiff worked in several capacities over the years, and was employed as a parts assembler and welder in April 1986, when he injured his back at work. In 1987, plaintiff applied for and began receiving long term disability ("LTD") benefits under the Plan.

The Summary Plan Description ("SPD") for the Plan in effect at the time that plaintiff applied for benefits states that a Plan participant will be eligible for benefits when he suffers from a "total disability," which the SPD defines as follows:

> "Total disability" as used in this Plan means inability, because of an injury or sickness, to engage in any gainful occupation for which you are reasonably fitted by education, training or experience. However, for the first twelve months of your absence due to disability, you will be considered totally disabled if you are unable, because of illness or injury, to perform any and every duty of your occupation. In addition, you must be under the care of a physician for any required treatment of your disability.

Declaration of Hope A. Webber (Docket Item 17) Ex. A at 10. The SPD also states that no benefits will be paid "after the date you fail to furnish satisfactory proof, as required by the insurance company, of the continuance of total disability." *Id.* at 4.

After it began paying benefits to plaintiff, MetLife would periodically review his claim to determine if plaintiff's condition continued to meet the definition of "total disability." In January 1997, MetLife arranged for plaintiff to be examined by Robert Siliciano, M.D., an orthopedic surgeon. In his report, Dr. Siliciano opined that plaintiff "could tolerate an occupation which would allow him to change positions from sitting, standing and walking periodically. He should also refrain from doing repetitive bending or lifting more than 10 lbs." Record at 18.[1]

MetLife forwarded Dr. Siliciano's report to Dr. Manola Basa, plaintiff's treating physician, and invited him to respond with any comments or additional documentation. Record at 295. MetLife alleges, and plaintiff does not dispute, that MetLife received no response.

MetLife then solicited a labor market survey from Stickney Rehabilitation Services, Inc. ("Stickney"), which submitted a report on March 17, 1997, listing eleven jobs within fifty miles of plaintiff's home that, according to Stickney, were within plaintiff's work experience and physical restrictions. Record at 291.

Plaintiff then agreed to participate in job placement. To that end, MetLife retained CRA Managed Care, Inc. ("CRA"), which in a report dated April 24, 1997, described plaintiff as "not financially motivated to return to work." Record at 15. A final report dated June 4, 1997 indicated that plaintiff showed little or no interest in finding a job, and that "further vocational assistance would not be indicated." Record at 14.

---

1. The record of plaintiff's claim history is attached to the Declaration of Frank P. Zito (Docket Item 18).

Also in June 1997, MetLife sent plaintiff a letter advising him that "it has not been established that you continue to be totally disabled as defined in Philip's [sic] LTD Plan. It appears that you are able to perform some type of remunerative work. We must therefore advise you that your claim for LTD benefits is being terminated effective July, 1, [sic] 1997." Record at 272.

Plaintiff then sought review of MetLife's decision to discontinue his benefits. In the course of that review, MetLife accepted additional medical documentation from plaintiff, and sent his entire file to Network Medical Review Co. ("NMR"). In a report dated June 16, 1998, Dr. Robert Petrie of NMR opined that plaintiff was "capable of performing job duties within the parameters listed," which included some relatively moderate physical restrictions on lifting, carrying, etc. Record at 11.

On June 23, 1998, MetLife forwarded Dr. Petrie's report to Dr. Basa, plaintiff's treating physician, stating, "[i]f you are in agreement [with Dr. Petrie's findings], please sign, date and return this notice to our attention." Dr. Basa did so on June 24, 1998. Record at 190.

Plaintiff also submitted to MetLife a report dated July 10, 1998, prepared by Dr. Robert Tiso of Office of Pain Management. Dr. Tiso did not render an opinion as to whether plaintiff could work, but described plaintiff's medical history and physical condition, and stated that Dr. Tiso's "impression [wa]s that of Post laminectomy pain syndrome with a severe reactive depression." Record at 184.

MetLife forwarded Dr. Tiso's report to Dr. Petrie, who stated that "[a]fter reviewing the additional information, the previous opinion is unchanged. Mr. Brooks has mild residual symptoms and deficits . . . . It remains my opinion that he is capable of

working within the parameters indicated in the report dated June 16, 1998." Record at 7.

Based on these reports, MetLife upheld its prior determination to discontinue plaintiff's benefits.

Plaintiff commenced the present action in January 1999. He alleges that he remains totally disabled and that defendants' determination that he is not disabled is arbitrary and capricious, and a breach of their fiduciary duty. The first cause of action seeks benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). The second cause of action seeks a declaration that plaintiff is entitled to benefits, and the third cause of action requests an award of attorney's fees under 29 U.S.C. § 1132(g)(1). The fourth cause of action appears to assert claims under both ERISA and New York law. It alleges that defendants' discontinuation of plaintiff's benefits constituted a breach of their fiduciary duty and their implied covenant of good faith and fair dealing, and that it was capricious, arbitrary and unreasonable. The fourth count also asks for punitive damages "under either or both State of New York and Federal Law," although it does not identify any statutory or other legal basis for such an award.

## DISCUSSION

### I. Plaintiff's Requests for Discovery and for an Extension of Time

Before addressing the merits of the parties' motions for summary judgment, it is necessary to address plaintiff's alternative requests for other forms of relief. Plaintiff's motion is styled, "Motions for Rule 37 and 26 Disclosure and Relief and Plaintiff's Summary Judgment or in the Alternative Extension to Answer Brief and for Judgment Per 29 USC 1132(C)(1) and 29 USC 1024(b)(4)." The notice of motion states that plaintiff seeks: (1) disclosure of a

certified copy of the "Connecticut General North American Philips 1986 Long Term Disability Policy–Plan" ("the 1986 Plan"), sanctions under Fed.R.Civ.P. 37, "and/or ... a remedial and preclusive Order that standard of decision shall be preponderance of the evidence"; (2) an order directing defendants to pay plaintiff $100 per day for each day that they failed to provide information required under ERISA, such as a copy of the Plan, pursuant to 29 U.S.C. § 1132(c)(1); (3) denial of defendants' motion for summary judgment; (4) summary judgment in favor of plaintiff on his first cause of action "or in the alternative, extension of time for filing complete brief on behalf of Plaintiff should the Court desire same after completion of Motions number 1, 2, and 3 above"; and (5) attorney's fees.

While plaintiff's papers are hardly a model of clarity, it appears that he contends that defendants have failed to produce a copy of the 1986 Plan, which plaintiff asserts was in effect when he first became disabled, and that this failure of production adversely affected his ability to respond to defendants' motion. Plaintiff contends that defendants have produced, and are relying on, a later version of the Plan ("the 1995 Plan"), which was in effect when the decision was made to discontinue plaintiff's benefits, but which plaintiff asserts is not controlling here. Apparently plaintiff's argument is that the standard of review (*i.e.,* arbitrary-and-capricious or *de novo* review) in this action depends on the amount of discretion, if any, given to the Plan administrator under the 1986 Plan, and that without a copy of that Plan, it is impossible to determine whether the Plan Administrator was given discretion to interpret the Plan. Plaintiff asserts that since defendants have failed to produce the 1986 Plan, they have failed to demonstrate that the Plan Administrator was given discretion to interpret the Plan, and that the

court should therefore apply a *de novo* standard of review.

In addition, plaintiff contends that without a copy of the 1986 Plan, he was unable to formulate a response to defendants' motion for summary judgment. Apparently, plaintiff asserts that it would have been impossible for him to address the merits of his claim and of defendants' motion until he knew which standard of review the court would apply. Plaintiff's brief does not contain any actual discussion of the issues relative to summary judgment; he states, "[b]ecause of the various outstanding Discovery related issues on which the Plaintiff has brought various motions briefed hereafter, the Plaintiff at this time submits a short outline of his proposed Summary Judgment as opposed to an extensive memo or brief and that outline is annexed hereto." That "outline," in its entirety, is as follows:

**SUMMARY JUDGMENT**

I.   Prior history

   (a)  Treating doctors-*Donaho vs. FMC Corp.,* 74 F.3d 894 (1996)

   (b)  Prior consultatives

   (c)  "Improvement" issues

II.   Arbitrary and capricious review by the Defendants

   (a)  Self interest

   (b)  Procedural

   (c)  Vocational

   (d)  Dr. Petrie-known Met hired gun, not a specialist on backs

III.   Relief at estoppel

   (a)  Reversal or remand

   (b)  Interest and attorney fees

Plaintiff's Motion at 15.

■   With respect to these issues concerning discovery and extensions of time, I see no basis to give plaintiff any of the relief that he seeks. First, it appears that

defendants have in fact produced a copy of the 1986 Plan. In his reply affidavit, plaintiff's attorney states, "[t]he Defendant(s) have finally produced the key Long Term Disability Plan ...." Docket Item 28 ¶ 3. A copy of that Plan is attached to the affidavit.

■ Furthermore, I am wholly unpersuaded by plaintiff's assertion that he was somehow hamstrung in his ability to respond to defendants' motion until he got a copy of the 1986 Plan. As stated, the only apparent significance of any of this is that the 1986 Plan arguably could have some bearing on the standard of review applied by this court in reviewing defendants' decision to discontinue plaintiff's benefits. There is absolutely no reason, however, why plaintiff could not have argued in the alternative, analyzing his claims under both an arbitrary-and-capricious and a *de novo* standard. Such arguments are commonly made in ERISA cases, since even when the plaintiff has had a copy of the relevant plan documents from the beginning, it is impossible to know for certain which standard the court will ultimately determine should apply.

If plaintiff simply assumed that he could defer addressing the merits of defendants' motion until after the court ruled on his discovery-related requests, he did so at his own peril. The court has never indicated any intent or inclination to deal first with plaintiff's requests, and then to allow additional briefing or submissions on the summary judgment motions, nor did plaintiff ever seek to confirm that such an arrangement would be acceptable to the court. The motion scheduling order in this case stated that "defendants filed a motion for summary judgment. Oral argument *on this motion* will be heard on February 13, 2001 at 10:00 a.m." (Emphasis added.) It could not have been clearer that the court intended to deal with the merits of defendants' motion at that time, not simply with plaintiff's requests concerning the 1986 Plan.

I recognize that Rule 56(f) contemplates permitting a period of discovery if necessary to allow a party to formulate a response to a motion for summary judgment. While that does not even appear to be the nature of plaintiff's request-rather, he seems only to have assumed that the court would issue a ruling on the standard of review to be applied prior to deciding the summary judgment motions—I do not believe that such relief would be called for in any event. As stated, even without the 1986 Plan plaintiff could have presented arguments in opposition to defendants' motion. More to the point, however, plaintiff does now have a copy of the 1986 Plan, and has in fact had it for months. Plaintiff's attorney's reply affidavit, in which he states that he has received a copy of the 1986 Plan, was filed on July 5, 2000, seven months before oral argument was held. Plaintiff had months, then, to read the Plan and present whatever arguments he wished to make concerning the standard of review or any other matters, based on the terms of that Plan. Instead, he elected to submit only an "outline" of his arguments concerning summary judgment. As stated, he did so at his own risk.

■ Nor do I believe that plaintiff should be awarded the statutory penalty of $100 per day under 29 U.S.C. § 1132(c)(1). For one thing, that section[2], combined

---

2. Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title or section 1021(e)(1) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control

with § 1132(a)[3], provides a cause of action when an administrator fails to provide certain information. Plaintiff's complaint, however, does not assert any claim for relief under § 1132(c)(1). In effect, then, plaintiff is seeking summary judgment on a claim that is not even pleaded in his complaint.

Even if the court were to consider the merits of plaintiff's request, however, I would not grant the relief sought. By its terms, § 1132(c)(1) makes the $100–per–day penalty discretionary with the court. Courts often decline to impose the penalty absent a showing of prejudice or bad faith. *See Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir.1994) ("Many courts have refused to impose any penalty at all under § 1132(c)(1)(B) in the absence of a showing of prejudice or bad faith") (citing *Rodriguez–Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 588–89 (1st Cir. 1993); *Godwin v. Sun Life Assurance Co. of Canada*, 980 F.2d 323, 328–29 (5th Cir. 1992)). I find no showing of either prejudice or bad faith here. As noted, plaintiff has had a copy of the 1986 Plan for months, and has had ample time in which to present arguments based on the terms of that plan with respect to the summary judgment motions. I also see no bad faith here. Plaintiff's first discovery requests did not specifically request the 1986 Plan, but only asked for "a copy of the underlying Plan–Policy Agreement ....," *see* Affidavit of James J. Navagh (Docket Item 25) Ex. A, ¶ 1, and not until his second requests, dated September 30, 1999, did

plaintiff expressly request a copy of the 1986 Plan. Plaintiff has made no showing that defendants deliberately withheld that plan, or that they were dilatory in complying with his request.

## II. Motions for Summary Judgment

### A. Standard of Review

■ In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that "a denial of benefits challenged under [29 U.S.C. § 1132(a)(1)(B) ] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator ... discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the court is to apply the more deferential arbitrary-and-capricious standard. The Second Circuit has stated that "[w]here the plan reserves such discretionary authority, denials are subject to the more deferential arbitrary and capricious standard, and may be overturned only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Kinstler v. First Reliance Std. Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir.1999) (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir.1995)); *see also O'Shea v. First Manhattan Co. Thrift Plan & Trust*, 55 F.3d 109, 112 (2d Cir. 1995) (denial is arbitrary and capricious where plan administrator or fiduciary has "impose[d] a standard not required by the

---

of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each viola-

tion described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

3. Section 1132(a) provides that a "civil action may be brought ... for the relief provided for in subsection (c) of this section ...."

plan's provisions, or interpret[ed] the plan in a manner inconsistent with its plain words") (citation and internal quotation marks omitted). The burden of establishing that the arbitrary-and-capricious standard applies is upon the plan administrator, since "the party claiming deferential review should prove the predicate that justifies it." *Sharkey v. Ultramar Energy Ltd.,* 70 F.3d 226, 230 (2d Cir.1995).

■ In the case at bar, all the relevant documents demonstrate that the Plan Administrator is clearly given discretion to construe the terms of the Plan, and that the arbitrary-and-capricious standard should apply. Furthermore, the entire matter concerning the 1986 and 1995 Plans proves to be immaterial, because regardless of which plan applies, the administrator is granted discretion.

Under both the 1986 Plan and the 1995 Plan, which was in effect when MetLife discontinued plaintiff's benefits in 1998, Philips is named as the Plan Administrator, and MetLife as the insurer.[4] *See* Heller Reply Aff. (Docket Item 28) Ex. 3 at 17; Webber Decl. (Docket Item 17) Ex. B at 17. Both plans also contain the following language:

> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

Heller Reply Aff. Ex. 3 at 18; Webber Decl. Ex. B at 18.

Plainly, then, the Administrator is given precisely the kind of discretionary authority discussed by the Supreme Court in *Bruch.* Accordingly, defendants' decision to discontinue plaintiff's LTD benefits can be reversed only if that decision was arbitrary and capricious.

## B. Defendants' Decision to Discontinue Plaintiff's Benefits

■ After reviewing the record, I find that defendants' decision to discontinue plaintiff's LTD benefits is clearly supported by the evidence, and must be upheld. Defendants had before them ample documentation indicating that plaintiff was physically able "to engage in any gainful occupation for which [he was] reasonably fitted by education, training or experience," and that he therefore no longer had a "total disability," as required by the Plan as a prerequisite for eligibility for benefits.

The relevant medical evidence and opinions have already been set forth, and will be repeated only briefly. By the time MetLife made its final determination that plaintiff was no longer totally disabled, MetLife had before it the following medical evidence: Dr. Siliciano's opinion in January 1997 that plaintiff "could tolerate an occupation which would allow him to change positions from sitting, standing and walking periodically. He should also refrain from doing repetitive bending or lifting more than 10 lbs"; Dr. Petrie's June 1998 report in which he opined that plaintiff was "capable of performing job duties within the parameters listed"; the signature of plaintiff's own physician, Dr. Basa, indicating his agreement with Dr. Petrie's findings; and Dr. Petrie's August 1998

---

4.  At oral argument on the pending motions, counsel for defendants stated that although Philips is the Plan Administrator, Philips has delegated to MetLife the authority to determine eligibility for benefits. Plaintiff does not appear to dispute that assertion.

report stating that after reviewing Dr. Tiso's July 1998 report (which did not contain any opinion regarding plaintiff's ability to work), Dr. Petrie's "previous opinion [wa]s unchanged. Mr. Brooks has mild residual symptoms and deficits .... It remains my opinion that he is capable of working within the parameters indicated in the report dated June 16, 1998."

MetLife also had reports from third parties indicating that plaintiff was simply not interested in finding work. Specifically, MetLife had received Stickney's March 1997 report listing eleven jobs within fifty miles of plaintiff's home, all of which were said to be within plaintiff's work experience and physical restrictions, as well as CRA's April 1997 report describing plaintiff as "not financially motivated to return to work," and its June 1997 report indicating that plaintiff showed little or no interest in finding a job, and that "further vocational assistance would not be indicated."

In opposition to defendants' motion, plaintiff has presented virtually no evidence indicating that he does remain totally disabled. His position appears to be simply that because at one point defendants found that he was totally disabled, they are somehow estopped from ever finding that he has ceased to be disabled, or at least that he has ceased to present sufficient proof of his disability, as required by the Plan. The Plan, however, clearly provides that benefits will come to an end in the event that such proof is not forthcoming. The SPD states that no benefits will be paid "after the date you fail to furnish satisfactory proof, as required by the insurance company, of the continuance of total disability." Similarly, the Plan itself (again, both versions of the Plan contain identical language in this regard) states that benefits will be paid "provided you remain Totally Disabled and proof of

continued Total Disability is submitted, at your expense, to us upon request," and that "[t]he Monthly Benefit will stop on the earliest of" certain events, one of which is "the date that you cease to be Totally Disabled." Heller Reply Aff. Ex. 3 at 8; Webber Decl. Ex. B at 8.

■ Plaintiff repeatedly asserts that defendants have somehow retroactively amended the Plan so as to cut off previously vested benefits. That assertion is completely without support in the record. Plaintiff has pointed to no changes in the Plan itself of any relevance to defendants' decision to discontinue his benefits, and as the language quoted above makes clear, the Plan has expressly provided throughout the relevant time period that benefits will end if the beneficiary ceases to present proof of his disability.

Moreover, the whole concept of "vesting" has no application here. The Plan at issue is not a pension plan, but a welfare plan. " '[T]he general rule' under ERISA is 'that an employee welfare benefit plan is not vested and that an employer has the right to terminate or unilaterally to amend the plan at any time.' " *Joyce v. Curtiss-Wright Corp.,* 171 F.3d 130, 133 (2d Cir. 1999); *see also American Fed'n of Grain Millers v. International Multifoods Corp.,* 116 F.3d 976, 979 (2d Cir.1997)("Unlike pension plan benefits, the benefits provided by a welfare plan generally are not vested ...."); *Owens v. Storehouse, Inc.,* 984 F.2d 394, 398 (11th Cir.1993) ("Absent contractual obligation, employers may decrease or increase benefits" provided by a welfare plan); *Blake v. H–2A and H–2B Voluntary Employees' Beneficiary Ass'n,* 952 F.Supp. 927, 935 (D.Conn.1997) ("Under ERISA, as the Second Circuit has made clear, there is no vested right to a continuation of a certain level of medical benefits under a welfare benefits plan").

Even if defendants had modified the Plan, then, and the effect of that modifica-

tion was to render plaintiff ineligible for continued benefits, that would not constitute an ERISA violation. As stated, however, that did not occur here. Defendants simply reached a determination, in accordance with the preexisting terms of the Plan, that plaintiff had not presented adequate proof that he met the definition of total disability. Far from arbitrary and capricious, defendants' decision in that regard was well supported by the evidence.

For these reasons, plaintiff's claim for benefits under 29 U.S.C. § 1132(a)(1)(B) must be dismissed, as well as his second cause of action, which seeks a declaration that he is entitled to benefits under the Plan. His fourth cause of action, the precise nature of which is unclear, as it asserts everything from breach of fiduciary duty to claims under state law, and which also seeks punitive damages, must also be dismissed. The record shows that defendants' decisions were reasonable and supported by the evidence, and plaintiff has presented no proof at all that defendants breached their fiduciary duty under ERISA.[5] In addition, any claims under state law that plaintiff attempts to assert are preempted by ERISA, *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 44, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), and his claim for punitive damages fails, as such damages are not available under ERISA. *See Massachusetts Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 286 (2d Cir.1992).

Since plaintiff is not a prevailing party in this action, I also decline to award him attorney's fees, so his third cause of action must be dismissed as well. *See Birmingham v. SoGen–Swiss Int'l Corp. Retirement Plan,* 718 F.2d 515, 523 (2d Cir.1983) ("attorney's fees may be awarded to the prevailing party under ERISA in the absence of some particular justification for not doing so").

## CONCLUSION

Defendants' motion for summary judgment (Docket Item 16) is granted, and the complaint is dismissed. Plaintiff's "Motions for Rule 37 and 26 Disclosure and Relief and Plaintiff's Summary Judgment or in the Alternative Extension to Answer Brief and for Judgment Per 29 USC 1132(C)(1) and 29 USC 1024(b)(4)" (Docket Item 21) is denied.

IT IS SO ORDERED.

---

**5.** Since the gist of plaintiff's claim is simply that he is entitled to benefits under the terms of the Plan, a claim for breach of fiduciary duty under 29 U.S.C. § 1109 would be inappropriate in any event. *Lee v. Burkhart,* 991 F.2d 1004, 1009 (2nd Cir.1993)